130 A.3d 738

**John D. NARDONE, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellee.**

Supreme Court of Pennsylvania.

Argued May 6, 2015.

Decided Dec. 29, 2015.

586

588

Albert Joseph Flora Jr., Esq., Albert J. Flora, Jr., Attorney at Law, Wilkes–Barre, for John D. Nardone.

Terrance M. Edwards, Esq., PA Department of Transportation, Robert J. Kopacz, Esq., Dunmore, for Bureau of Driver Licensing.

SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.

### *OPINION*

Justice STEVENS.

This appeal implicates divergent decisional overlays to the statutory scheme governing chemical testing of persons suspected of DUI and related traffic offenses. Pronouncements of the Commonwealth Court have consistently construed the "Implied Consent Law" at 75 Pa.C.S. § 1547 to require a motorist to assent unequivocally to an official request to take whichever statutorily-prescribed chemical test police select on pain of automatic license suspension, whereas Superior Court construction has discerned a motorist's compliance with the law if he responds to the official request by asking to take a reasonably practicable, prescribed test of his choosing. We, therefore, granted review to consider whether a motorist who requests an alternative test to the officer's preferred test exercises a statutory right or, instead, refuses to submit to

chemical testing in violation of the Implied Consent Law so as to incur suspension of his operating privileges.

Located within "Subchapter B.—Comprehensive System for Driver Education and Control" of the Vehicle Code's Chapter 15, entitled "Licensing of Drivers," is Section 1547, which pertains to "Chemical testing to determine amount of alcohol or controlled substance" and provides in pertinent part:

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under the influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) **Suspension for refusal.**—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

. . .

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

. . .

(i) **Request by driver for test.**—Any person involved in an accident or placed under arrest for a violation of section 1543(b)(1.1), 3802 or 3808(a)(2) may request a chemical test of his breath, blood or urine. Such requests shall be honored when it is reasonably practicable to do so.

. . .

75 Pa.C.S. § 1547(a)(1) and (2), (b)(1) and (2), and (i).

Police arrested Appellant for violating 75 Pa.C.S. § 3802 (relating to driving under influence of alcohol or controlled substance) ("DUI") and transported him to a nearby hospital for chemical testing. After reading a PennDOT Form DL–26 to inform Appellant of the Implied Consent Law and alert him to the consequences of refusing to submit to chemical testing, *see* Section 1547(b)(2), *supra*, police requested that he submit to a chemical test of his blood. Appellant replied by showing police what he considered to be an inexplicably large coagulation of blood in his arm resulting from a relatively minor bump sustained earlier in the day, and he expressed his concern that his body may react in a similar way to a needle. He, therefore, asked police if he could, instead, submit to urinalysis, a breathalyzer or both.[1] After brief discussion, police responded that Appellant's request for an alternative test constituted a refusal because, they explained, they held exclusive discretion to select the test. Appellant disputed that he was refusing chemical testing and reiterated that he was willing to take either or both of the other tests. Nevertheless, police asked Appellant to sign the DL–26 form in acknowl-

1. The notes of testimony reflect that the investigating police officer informed Appellant that there was no breathalyzer at the hospital, but there was no similar assertion that the hospital lacked the means to conduct a chemical test of urine. N.T., 10/21/13 at 15, 18.

edgement of his refusal to take the blood test. Appellant continued to disagree in vain with their assessment until he eventually signed the form and added the notation that police refused his offer to submit to a breathalyzer and/or urine test. At no time during this discussion did Appellant indicate he would consent to the official request for a blood test. The Department of Transportation's Bureau of Driver Licensing ("DOT") subsequently suspended Appellant's operating privilege for one year pursuant to the requirements of Section 1547(b)(1)(i), *supra.*

Appellant appealed his license suspension to the Court of Common Pleas of Luzerne County, which, after a *de novo* hearing, sustained his appeal. Specifically, the trial court determined that Appellant's failure to submit to the test requested by police did not constitute a refusal to submit to chemical testing under Section 1547(b)(1) because he had otherwise agreed to take a reasonably practicable, different test pursuant to Section 1547(i), *supra.* In so deciding, the trial court relied upon the statutory construction expressed by the Superior Court in *Commonwealth v. Barker,* 70 A.3d 849 (Pa.Super.2013) *(en banc).* In *Barker,* the Superior Court held that an officer's refusal to grant alternative testing to a motorist who presented a facially valid allegation that he was a brittle diabetic suffering infection from a recent injection violated the right to alternative testing found in Section 1547(i).[2]

**2.** In recognizing a motorist's right to alternative testing in Section 1547(i), the majority in *Barker* stated that it discerned from the statutory scheme:

> [A] legislative blueprint for proving a motorist's use of alcohol and controlled substances that balances the governmental interest of obtaining evidence of individual violations with the right of the individual to due process and some measure of autonomy where circumstances render an officer's choice of testing methods not "reasonably practicable" for the motorist involved.

*Id.* at 858. The majority found the scheme to be plain and explicit on this point so as to obviate the need to resort to rules of statutory construction. Nor did the majority discuss whether the motorist's explicit right to request a test as set forth in Section 1547(i) may simply consist of the right to obtain a test either in addition to the officer's preferred test or in the complete absence of an official request for testing.

DOT appealed to the Commonwealth Court, which reversed in a unanimous, unreported panel decision that refused to recognize a motorist's right under Section 1547(i) to alternative chemical testing. Supporting this decision was well-established precedent of the intermediate court that "Section 1547 does not afford a [motorist] a choice among the three tests listed; rather, it is the police officer who has the option to choose the type of chemical test to be administered." *Tarka v. Com., Dept. of Transp., Bureau of Driver Licensing,* 756 A.2d 138, 141 (Pa.Cmwlth.2000) (citation omitted) *overruled on other grounds by Orloff v. Com., Dept. of Transp., Bureau of Driver Licensing,* 912 A.2d 918 (Pa.Cmwlth.2006). It is for this reason that anything other than a direct assent to submit to the chemical test requested by the police officer constitutes a Section 1547(b)(1) refusal, which is not vitiated by a motorist's offer to submit to a different test. *McKenna v. Com., Dept. of Transp., Bureau of Driver Licensing,* 72 A.3d 294 (Pa.Cmwlth.2013). It is only where a motorist who failed to assent to the officer's request establishes through competent medical evidence that he was mentally or physically incapable of assenting can he avoid the civil penalty of license suspension. *Lemon v. Com., Dept. of Transp., Bureau of Driver Licensing,* 763 A.2d 534 (Pa.Cmwlth.2000). The facts of Appellant's case, the panel below held, brought him squarely under this jurisprudence, requiring reversal.

This Court granted Appellant's petition for allowance of appeal to resolve these conflicting interpretations of the Implied Consent Law, and we directed the parties to brief the following issues:

(1) In response to a request for chemical testing arising out of a DUI arrest, does a motorist have a statutory right to request alternative chemical testing under section 1547(i) of the Vehicle Code (75 Pa.C.S. § 1547(i))?

(2) If a motorist has a statutory right to request alternative chemical testing under section 1547(i) of the Vehicle Code when arrested for a DUI, does section 1547 require that any such request be conditioned upon the

motorist having a medical condition preventing him from undergoing the chemical test requested by the police?

(3) In response to a police request for chemical testing arising out of a DUI arrest, does a motorist's request for alternative chemical testing, without more, constitute a refusal to undergo chemical testing under 75 Pa.C.S. § 1547(b)(1)?

*Nardone v. Com., Dept. of Transp., Bureau of Driver Licensing,* 629 Pa. 317, 105 A.3d 658 (2014).

██ "Our scope of review of a decision in a license suspension case is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision." *Terraciano v. Com., Dept. of Transp., Bureau of Driver Licensing,* 562 Pa. 60, 753 A.2d 233, 236 (2000) (citation omitted). However, where the question is one of statutory construction, which is a question of law, "this Court's review is plenary and we owe no deference to the lower courts' legal conclusions." *Siekierda v. Com., Dept. of Transp., Bureau of Driver Licensing,* 580 Pa. 259, 860 A.2d 76, 81 (2004) (citation omitted).

██ The object of statutory interpretation is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Hannaberry HVAC v. W.C.A.B. (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524, 531 (2003) (citing *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995)). Resort to the rules of statutory construction is to be made only when there is ambiguity in the provision. We have recognized that a statute is ambiguous where different interpretations of statutory language are plausible. *Malt Beverages Distributors Ass'n v. Pennsylvania Liquor Control Bd.,* 601 Pa. 449, 974 A.2d 1144, 1153 (2009). *See generally Trizechahn Gateway LLC v. Titus,* 601 Pa. 637, 976 A.2d 474, 483 (2009) (recognizing that an ambiguity exists when there are at least two reasonable

interpretations of the text under review). If the words of the statute are not explicit, the General Assembly's intent may be ascertained by considering:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). The application of an *in pari materia* construction may be made to ambiguous statutes. *See Oliver v. City of Pittsburgh*, 608 Pa. 386, 11 A.3d 960, 965 (2011) (citing AM.JUR.2d *Statutes* § 103). Moreover, in ascertaining the General Assembly's intent, we presume the General Assembly did not intend a result that is absurd, impossible of execution or unreasonable. *Id.;* § 1922(1).

Section 1547(i) plainly and explicitly provides that a motorist's request for a chemical test of his breath, blood or urine shall be honored if reasonably practicable. What it does not clarify, however, is the use to which the right to a chemical test provided thereunder may be put. That is to say, whether the test may serve as an alternative to a test selected by a police officer for purposes of satisfying implied consent, an additional test to the officer's chosen test, a means by which to acquire a test when none was officially requested or some combination of the three is not explicit in the text of Section 1547(i). We, therefore, look to the rules of statutory construction to avoid the ambiguity.

Initially, as part of its argument against construing a right to an alternative chemical test in 1547(i), DOT contends that Section 1547(i)'s relevance and intended application lie exclusively in the criminal law context as a means by which the motorist may exercise autonomy over his impending criminal

defense. The Section 1547(i) right of a motorist to request a particular test, under this theory, confers only the right to receive a test either in addition to the test requested by the police officer or in the absence of an official request. It follows, DOT argues, that Section 1547(i) precludes a motorist from relying on a request made thereunder to avoid the civil penalty of license suspension.

Section 1547(i) itself specifies no intent to confine its application to criminal law proceedings, and in one sense the text supports the conclusion that use of the Section 1547(i) chemical test for civil law purposes is contemplated. Specifically, by extending its reach to include any person involved in an accident, Section 1547(i) plainly contemplates motorists who wish to establish their sobriety at the critical time in anticipation of either bringing or defending against a civil action sounding in negligence. Such motorists may not be under official suspicion of DUI and have not, therefore, been asked to submit to chemical testing. Yet, Section 1547(i) provides them with a means by which to insist that authorities secure chemical testing for them, provided doing so is reasonably practicable.

Whether use of the Section 1547(i) test as a submission to an official request for chemical testing to avoid the civil penalty of license suspension is similarly contemplated, however, is not readily apparent. Section 1547(i) places "*any person* ... under arrest for DUI*" within its ambit, and its language reasonably may be construed as, thus, pertaining to, *inter alia*, a person under arrest for DUI who has been asked to submit to chemical testing. Read in isolation, such text leaves open merely the possibility that a Section 1547(i) test may be used as a submission to an official request for chemical testing.[3] Reading Section 1547(i) *in pari materia* with the remainder of Section 1547, however, reveals the General Assembly did not intend Section 1547(i) to modify the essential

3. It is just as reasonable, however, to construe this text in isolation as conferring nothing more than a right to obtain a test either where none is officially requested or in addition to the test requested by police, where a motorist may, for example, request a different test in the belief it better suits his interest in preparing a defense.

construct of implied consent appearing in Sections 1547(a) and (b) by effectively empowering a motorist to negate his implied consent to the test requested by police.

■ Reproduced in its entirety *supra*, Section 1547(a) provides that a motorist implicitly consents as a matter of law to one or more tests of breath, blood or urine when a police officer has reasonable grounds to arrest him for DUI. Implied consent, therefore, applies to an official request for chemical testing that asks for *any* of the three prescribed tests. In other words, consent is implied regardless of which test police ask a motorist to take.

In setting forth its prescribed chemical tests, moreover, Section 1547(a) does not express a hierarchy among them in terms of quality, accuracy or reliability. No test is presumed more burdensome than another. The statute recommends no particular one, nor does it provide an order of preferred chemical testing an officer is directed to consider in choosing a test. Indeed, the text reflects no legislative preference among the three tests, and it lists them as if they were presumptively equal in all respects relative to achieving the purposes of the statute. It follows that the three chemical tests are not presented as a menu of choices to be offered a motorist confronted with a request to submit to chemical testing.

■ Section 1547(b)(1) provides that the civil penalty of license suspension shall befall any person under arrest for DUI who is "requested to submit to chemical testing and refuses to do so." Whether this provision contemplates suspension for refusing to submit to the test or tests actually requested of the motorist or if it, instead, contemplates suspension only for refusing to submit to chemical testing "in general" is not clear on its face. However, reading Section 1547(b)(1) in concert with the implied consent to submit to all tests pursuant to Section 1547(a), other provisions of the statute, and in light of the overarching purpose of the remedial scheme to remove scofflaw, intoxicated motorists from our roadways, we construe it to call for license suspension upon a

failure to submit to the chemical test or tests requested of the motorist.

■ Reading Section 1547(b)(1) to reflect an intent to provide motorists with the right to choose their preferred chemical test would fail to give effect to the mandate of universal implied consent provided in Section 1547(a). Indeed, it would be incongruous to establish a system that deems a motorist to have implicitly consented to take any test or tests that may be requested of him during a DUI arrest but then gives him the right to decline any official request for a test or tests as long as his preferred test is reasonably practicable. By implicitly consenting to any and all chemical tests in Section 1547(a), a motorist arrested for DUI is subject to any and all tests, and he effectively relinquishes any right to choose his preferred test over an officer's.

■ The General Assembly intended the ensuing government/citizen interaction addressed in Section 1547(b)(1) to manifest the Section 1547(a) rule of implied consent at the moment police request a motorist to submit to chemical testing. Section 1547(b)(1), therefore, contemplates that when a motorist has been "requested to submit to chemical testing" he has been confronted with the type or types of chemical testing the officer prefers him to take. To construe Section 1547(b)(1) as instead contemplating a request only for "chemical testing" in general, which would have the unavoidable effect of requiring an officer to literally utter a request for "chemical testing" and then ask the motorist to participate by selecting his preferred test, would render implied consent as specified in Section 1547(a) meaningless and divest an officer of authority to direct the course of a DUI investigation. It could not have been the General Assembly's intent to establish a rule of implied consent at the outset of the statutory scheme only to immediately thereafter devise a procedure for obtaining chemical testing that would nullify the rule. We, therefore, discern "chemical testing" simply as a collective term comprising "chemical test or tests" in recognition of an officer's authority under Section 1547(a) to request one or more

tests. This meaning of the term "chemical testing" is apparent elsewhere in Section 1547. *See, e.g.,* Section 1547(c)—"Test results admissible in evidence," which refers, in pertinent part, to "the amount of alcohol or controlled substance in the defendant's blood, as shown by *chemical testing* of the person's breath, blood or urine, *which tests* were conducted by qualified persons. . . ." 75 Pa.C.S. § 1547(c) (emphasis added).

For the same reasons, an interpretation of Section 1547(i) that would recognize therein an implicit right to alternative testing cannot be reconciled with the implied consent construct in Sections 1547(a) and (b), as such a right would represent the exception that effectively swallows the rule of implied consent. If the General Assembly had intended such a profound limitation to be placed on implied consent, it easily could have made a right to alternative testing explicit in the statute. It did not do so. Moreover, it would be logical to expect that any language explicitly providing that a motorist's request for an alternative test shall constitute a submission to chemical testing in satisfaction of implied consent would either appear in, immediately follow or, at the very least, specifically reference Section 1547(b)(1)—the very section devoted to the civil penalty of license suspension and how the police/motorist interaction bears on the prospect of suspension. The General Assembly, however, incorporated no such language in Section 1547.

Furthermore, the placement and progression of subsections within Section 1547 suggest a connection between Sections 1547(a) and (b)(1) and Section 1547(i) that is tenuous at best. The very structure of Section 1547, therefore, is also not supportive of construing 1547(i) to provide an implicit right to alternative testing that would modify the implied consent rubric in Sections 1547(a) and (b). Specifically, at the outset of Section 1547, Sections 1547(a), (b), and (b.1) pertain to chemical testing given *at the direction of police,* as they address a motorist's implied consent for purposes of, *inter alia,* DUI stops and how the consent enables suspension for refusal to comply with the official request for chemical testing, respectively. Sections 1547(c), (e), and (f) pertain to the

admissibility of evidence at trial, providing, respectively, that test results, refusals, and other competent evidence bearing on intoxication are admissible evidence. Section 1547(g) then provides that the final outcome of the matter determines who shall pay the costs of chemical testing.

Only then, after all phases of the Commonwealth's civil and criminal cases against a motorist are covered, does the statute address the notion that a motorist may obtain a chemical test of his preference through Section 1547(h), which provides that a person already tested at the direction of a police officer may obtain an additional test from a physician of his choosing, and Section 1547(i). Reading all subsections as a whole in this way reveals the disconnect between Section 1547(i) and the implied consent rubric in Sections 1547(a) and (b) and further supports our conclusion that the intended scope of Section 1547(i) does not reach those matters bearing upon a motorist's implied consent.

Our construction discerning no statutory right to alternative testing in Section 1547 is supported further by reference to other enumerated factors proven to be salient in construing legislative intent. First, this construction is wholly consistent with our directive that interpretations of the Implied Consent Law are to enhance rather than impede its enforcement, thus advancing the purposes of the law. *Occhibone v. Com., Dept. of Transp., Bureau of Driver Licensing,* 542 Pa. 588, 669 A.2d 326, 328 (1995). We have acknowledged that the mischief to be remedied is the threat of scofflaw, intoxicated motorists and that an important statutory object to be attained is their removal from our roadways. *Id.* The Implied Consent Law, as we have construed it to require that motorists submit unequivocally to an officer's request for chemical testing on pain of license suspension, *Com., Dept. of Transp. v. Renwick,* 543 Pa. 122, 669 A.2d 934, 939 (1996), also serves the important purpose of notifying the driving community that motorists noncompliant with the proper administration of our chemical testing laws will be removed from our roadways swiftly through the civil penalty of license suspension.

■ So, too, does our interpretation thereby facilitate acquisition of chemical testing, which we have recognized as an additional purpose of the remedial scheme. *Occhibone, supra.* Chemical testing stands as uniquely objective evidence not only of a motorist's violation of BAC laws but also of his own physical capacity for safe driving at the critical time. Objective test results facilitate fair and impartial disposition of DUI cases and thereby enhance public confidence in the enforcement of the scheme.

The consequences of our construction include a decreased risk that police will be unduly delayed while exercising their duty under the remedial scheme to direct the course of chemical testing while in no way impairing a motorist's retained right to obtain an additional, reasonably practicable chemical test of his choosing immediately afterward pursuant to Section 1547(i). So, too, pursuant to Section 1547(h), may the motorist thereafter pursue the additional right to obtain chemical testing from a facility and provider of his own choosing, apart from the testing performed at the direction of the police officer. In these ways may a motorist retain autonomy over his pending criminal defense.

While a motorist does lose the ability enjoyed under the Superior Court's construction in *Barker* to control the type of intrusion he incurs at the direction of police, we note that such a concern is not explicitly addressed in the Implied Consent Law, which views all chemical tests to be equally reasonable in advancing the legitimate governmental purpose of obtaining BAC results from the driving public. Our construction also avoids the uncertainties that may arise from attempts to discern whether an alternative test under 1547(i) is reasonably practicable. While officers are well-acquainted with performing their duties under a reasonableness standard during DUI arrests, their good-faith attempts to accommodate the "reasonably practicable" standard could result in lengthier transport times leading to delayed *initial* testing and a consequential increased risk of compromised test results. An increase in the time allotted for testing would also prolong officers' time away from their assigned patrol areas, which could compro-

mise community safety as well. In contrast, enabling an officer to direct the course of the initial chemical testing would permit the selection of a test based on the nearest facility when time is of the essence.

For the foregoing reasons, we construe no right to alternative chemical testing in Section 1547(i). As drafted, Section 1547(i) provides no explicit right to obtain a test that will take the place of the officer's test, and we cannot infer such an implicit right in Section 1547(i) when it is not reconcilable with the implied consent construct in Sections 1547(a) and (b). In exchange for receiving operating privileges, motorists give their implicit consent to take all chemical tests reasonably requested of them during a DUI stop. Police request chemical testing,[4] and the motorist must submit to that request on pain of license suspension. Nothing in this construct refers to a right in the motorist to choose his test, even if it were reasonably practicable to honor such a request. Nor would recognizing such a right in a motorist to dictate the course of chemical testing advance the purposes of Section 1547 to promote safer roadways and punish motorists who refuse to comply with requests for chemical testing. Accordingly, we hold that Appellant had no statutory right to request alternative testing once he was confronted with an official request to submit to a blood test.

We next address whether Appellant's request for alternative chemical testing constituted a refusal under Section 1547(b)(1). The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court. *See Gregro v. Com., Dept. of Transp., Bureau of Driver Licensing,* 987 A.2d 1264, 1267 (Pa.Cmwlth.2010). What constitutes a "refusal" for purposes of Section 1547(b)(1) is not defined or otherwise described under Section 1547. In construing Section 1547(b)(1), this Court has stated "any response from a licensee that is 'any-

4. In *Occhibone, this Court inferred legislative* intent in Section 1547 to authorize personnel other than police officers to request and administer chemical testing. *Id.* at 328. We refer exclusively to "police" requesting chemical testing herein for ease of discussion.

thing less than an unqualified, unequivocal assent' to submit to testing constitutes a refusal, subjecting the licensee to the one-year suspension." *Todd v. Com., Dept. of Transp., Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655, 658 (1999) (quoting *Renwick*, 669 A.2d at 939). Our decisions applying this standard, however, have never held such assent occurs only if a driver agrees instantaneously to the official request for testing without making a single inquiry or request pertaining to his rights or obligations in the DUI testing process. Indeed, in *Renwick*, itself, we discerned a "refusal" from the motorist's "overall conduct" of overtly ignoring multiple requests for chemical testing followed by offering equivocal responses upon learning the consequences of a refusal, thereby displaying a "gamesmanship" inconsistent with supplying assent. *Id.*

While a series of Commonwealth Court decisions has at least facially moderated the *Renwick* standard with the qualification that anything "substantially" less than an unqualified, unequivocal assent constitutes refusal, *see Campbell v. Com., Dept. of Transp., Bureau of Driver Licensing*, 86 A.3d 344, 350–51 (Pa.Cmwlth.2014); *Sitoski v. Com., Dept. of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 19 (Pa. Cmwlth.2010); *Cunningham v. Com., Dept. of Transp.*, 105 Pa.Cmwlth. 501, 525 A.2d 9, 10 (1987); *Miele v. Commonwealth*, 75 Pa.Cmwlth. 130, 461 A.2d 359, 360 (1983), substantively, these decisions, consistent with *Renwick*, turn on a consideration of whether the motorist's overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing. So, for example, conduct inconsistent with verbal acquiescence may fall to this standard, *In re Budd*, 65 Pa.Cmwlth. 314, 442 A.2d 404, 406 (1982) (holding failure to make "honest effort" to supply sufficient breath sample is tantamount to a refusal), as may maintaining silence in response to an official request after having been read one's rights and obligations pursuant to a Form DL–26. *Broadbelt v. Com., Dept. of Transp., Bureau of Driver Licensing*, 903 A.2d 636, 641 (Pa.Cmwlth.2006) (holding meaningful opportunity to submit blood sample afforded to defendant who complained

neither of distractions nor confusion during twelve-minute review of the warning form). In this vein, the Commonwealth Court has held that the Implied Consent Law does not require police officers to "spend effort either cajoling the [motorist] or spend time waiting to see if the [motorist] will ultimately change his mind." *King v. Com., Dept. of Transp., Bureau of Driver Licensing,* 828 A.2d 1, 5, n. 8 (Pa.Cmwlth.2002) (citation omitted). *See also Com., Dep't of Transp., Bureau of Traffic Safety v. Doherty,* 88 Pa.Cmwlth. 482, 490 A.2d 481, 482 (1985) (discerning no refusal from defendant's mere question about propriety of speaking to lawyer before submitting to breathalyzer; question did "not evidence an attempt to debate, maneuver or negotiate the question of submission to the test"). Only when DOT meets its burden of proving that a motorist was given a "meaningful opportunity" or a "reasonable and sufficient opportunity" to comply with the chemical testing requirement of the Implied Consent Lawmay a court conclude that a motorist's failure to complete the requested test constitutes a refusal. *See Solomon v. Com., Dept. of Transp., Bureau of Driver Licensing,* 966 A.2d 640, 642 (Pa.Cmwlth.2009) (meaningful opportunity not given where officer declared refusal immediately after motorist directed short expletive at officer and offered ambiguous "do what you've got to do" in response to request to chemical testing); *Campbell,* 86 A.3d at 351 (reasonable and sufficient opportunity to complete breath test established by evidence that licensee given two chances to give adequate sample of breath before refusal declared); *Broadbelt,* 903 A.2d at 641.

In *Todd,* we applied the "reasonable and sufficient opportunity" standard in evaluating a "refusal" recorded after an officer had given a licensee three attempts to provide an adequate breath sample. The licensee argued that he had been denied the reasonable opportunity to consent because there was enough time remaining on the breathalyzer to make one more attempt, but we disagreed:

To effectuate the purposes of the implied consent law, testing officers must be afforded a degree of flexibility in obtaining satisfactory breath samples for a proper test, thus

enabling them to deal realistically with licensees who agree to submit to chemical testing, and yet repeatedly fail to provide sufficient breath samples for analysis.

In this case, DOT adduced sufficient facts to establish that Todd was provided with a reasonable and sufficient opportunity to take and complete the breath test. Todd's failure to provide the necessary samples after being afforded three opportunities clearly fell short of the required unqualified, unequivocal consent and thus constituted a refusal. . . . Since Todd made no attempt to establish a reasonable explanation for his failure, the trial court erred in sustaining his license suspension appeal.

*Id.* at 659.

Here, Appellant essentially argues that he was denied a reasonable opportunity to consent to the police request for a blood test because the police immediately treated his offer to take an alternative test as a refusal. Appellant contends "[he] never had the opportunity to consent or to refuse the initial offer made by the police." Brief of Appellant at 11. As discussed *supra,* decisional law construing Section 1547(b)(1) does not abide a refusal based merely on a motorist's offer to take an alternative test, without more, where the motorist has been denied a reasonable opportunity to consent. Nevertheless, the facts accepted by the trial court as finder of fact sufficed to show Appellant had the reasonable opportunity to consent and failed to do so.

There is no dispute that police advised Appellant of both his implied consent under the law and the consequences of refusing a request for chemical testing when they read the DOT DL–26 form to him verbatim. N.T., at 14–15. The trial court accepted that police requested a blood test, that Appellant offered to take an alternative test in response, and that a discussion ensued before police declared a refusal. Trial Court Opinion dated 11/6/13 at 1. Specifically, the trial court summarized the discussion as follows:

At the hearing, Officer Odgers testified he read the chemical testing warnings, also known as DL–26, to [Appellant]

and requested that [Appellant's] blood be tested. Officer Odgers testified [Appellant] wanted a breath test. He told [Appellant] the "breath machine" was not available. [Appellant] also requested a urine test. Officer Odgers responded by telling [Appellant] he wanted a blood test. [Appellant] did point to a bursa sac on his left arm as the reason he did not want blood withdrawn by use of a needle.

[Appellant] testified he was read the implied consent warnings by Officer Odgers. He wrote on the DL-form "offered to take breath or urine—options refused" and signed it. (Exhibit # 2). According to [Appellant], Officer Odgers told him it was "officer's discretion" which test a motor vehicle operator must submit to. [Appellant] testified he did not refuse to submit to testing. He was not given a choice. He testified if the "choices were revisited" he might have consented to a blood test.

Trial Court Opinion at 2.

Appellant contends that the trial court credited his testimony and discredited the officers' accounts of the discussion. In fact, the trial court limited its credibility determination in this regard to whether Appellant had successfully asserted his rights to alternative testing, which is strictly a legal question:

In the case before this Court, PennDOT did not establish [Appellant] refused to submit to a chemical test. In fact, his accent [sic] to a test was unqualified and unequivocal. His assent is not diminished by his request for an alternative test. [citations omitted]. On this point, the testimony of Officer Odgers and Officer Bradley Balutis is not credible. [Appellant] was clearly exercising his rights pursuant to section 1547(i). Also, clearly the police believed if [Appellant] did not submit to the test of their choosing he was refusing to submit to chemical testing.

Id. at 3–4. Notwithstanding the trial court's conflation of findings of facts and conclusions of law on this point, it is clear that the court otherwise did not discredit the officers' testimony as to what was discussed with Appellant from the time he was advised in accordance with Form DL–26 to the time officers declared a refusal and Appellant signed the form. As

for the time most proximate to the declaration of refusal, Appellant testified:

**APPELLANT:** And as I was describing [the condition of my arm] I said I'm willing to take a urinalysis, a breathalyzer, or both. I said, but I was expressing my concern about a blood test. And he responded it's an officer's discretion and it's a refusal. And that's when I said I'm not refusing, sir. I'm willing to take either or both of the alternate tests. And he said refused, sign here. And that's when he gave me the form.

N.T., 12/13/13 at 35. Appellant testified further that the entire exchange was probably no more than 60 seconds long and that he was never given the opportunity to "revisit his options" after his requests for an alternative test were denied and declared a refusal. He suggested that if he had been given the opportunity he may have taken the blood test. N.T., at 43–44.

The record makes clear that the officers explained Appellant's implied consent rights and obligations before requesting that he submit to a chemical test of blood. By Appellant's own admission, he twice disputed the officers' claims that he was refusing their requests by responding with his own request for alternative testing. He never voiced so much as an inclination, let alone an intention, to submit to the officers' request to take a chemical test of his blood even after he was told that refusing an official request as he was doing amounted to a violation of the Implied Consent Law. In what Appellant estimated was a 60–second exchange, N.T., at 43, he never availed himself of the opportunity to assent but, instead, persisted in denying that he could be deemed to refuse a request to submit to chemical testing when he was willing to take a breathalyzer, a urinalysis or both. Nevertheless, Appellant never agreed to take the blood test during this time and chose to sign the form and add a notation that he had offered to take the two other chemical tests.

In so doing, Appellant demonstrated an intractable unwillingness to consent to the official request that he submit

to a chemical test of his blood. This constituted a refusal under the Implied Consent Law, as Appellant possessed no right to alternative testing as he claimed. Appellant's belief that the officers misapprehended the law relating to an offer to submit to alternative testing was irrelevant to whether his refusal was justified under Section 1547. *See Com., Dept. of Transp., Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539, 543 (1996) (holding that "[a] motorist's subjective beliefs [about the accuracy of the officer's warnings] are insufficient justification for refusing to comply with the mandates of the Implied Consent Law."). Accordingly, the Commonwealth satisfied its burden of proving Appellant's refusal, which was a necessary element of its suspension case against him.

In his final issue certified for review, Appellant posits that "Section 1547(i) does not require as a condition to requesting alternative chemical testing that a motorist have a physical condition which precludes him from taking the test requested by police." Brief of Appellant at 17. Only if Appellant had claimed that he could not undergo any type of chemical testing because of an injury, he contends, would he then have had the obligation of supporting his claim with competent medical evidence. *Id.* at 19. As presented, this claim is predicated entirely on the discredited position that Subsection 1547(i) confers a right to alternative testing. Because our rejection of the predicate is dispositive of Appellant's final issue, we need not review it further. In addition, we refrain from *sua sponte* reviewing whether Subsections 1547(a) and (b) implicitly confer a right to alternative testing where a motorist asserts that an ostensible injury or condition prevents him from submitting to an official request for chemical testing. The question, though related to the one approved for our discretionary review, nevertheless implicates a different source for such a right and, therefore, has not been addressed with an adequate level of advocacy to support the exercise of discretionary review.

For the foregoing reasons, the order of the Commonwealth Court is AFFIRMED.

Justice EAKIN did not participate in the decision of this case.

Chief Justice SAYLOR, Justices BAER and TODD join the opinion.

Chief Justice SAYLOR files a concurring opinion in which Justice TODD joins.

Chief Justice SAYLOR, concurring.

I join the majority opinion save to the extent it may be construed to suggest, in *dicta*, that, if a motorist were given a choice from a number of specified chemical tests, this would negate the concept of implied consent. *See* Majority Opinion, at 599, 130 A.3d at 745–46 (indicating that allowing the motorist to select among reasonably practicable chemical tests would fail to effectuate the implied consent scheme and ultimately render it "meaningless").

As the majority notes, the statute does not reflect a preference or hierarchy concerning which test a motorist should be required to take. *See id.* at 598, 130 A.3d at 745. Accordingly, while there may be good reasons to commit the selection process to the discretion of the police officer, I see no basis to conclude the statutory scheme would become ineffectual if such a choice were given to the motorist. In this respect, I note that at least one jurisdiction has enacted such a framework for its implied consent law. See CAL. VEH. CODE § 23612(a)(2)(A) ("If the person is lawfully arrested for driving under the influence of an alcoholic beverage, the person has the choice of whether the test shall be of his or her blood or breath and the officer shall advise the person that he or she has that choice."). I do agree with the majority, however, that a similar ability to choose is not mandated by our own implied consent law.

Justice TODD joins this concurring opinion.