# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donnell O. Parker,                              :
                                 Appellant      :
                                                :
                v.                             :   No. 929 C.D. 2023
                                                 :
Commonwealth of Pennsylvania,                   :
Department of Transportation,                   :
Bureau of Driver Licensing                      :   Submitted: July 5, 2024


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE MATTHEW S. WOLF, Judge


OPINION BY JUDGE WOLF                             FILED: August 8, 2024

           Donnell O. Parker (Licensee) appeals from the July 21, 2023 order of the Court of Common Pleas of York County (trial court). The trial court denied Licensee's appeal from the 12-month suspension of his personal and commercial driver's licenses under Pennsylvania's Implied Consent Law, 75 Pa. C.S. §§ 1547(b)(l)(i), 1613(d.1).[1] The only issue before us is whether the Department of Transportation, Bureau of Driver Licensing (DOT) adequately proved that Licensee was asked to submit to a chemical test, such that he had a

---

[1] Section 1547 of the Vehicle Code applies to non-commercial drivers and relevantly provides that "[i]f any person placed under arrest for [driving under the influence of alcohol or a controlled substance (DUI)] *is requested to submit to chemical testing and* refuses to do so . . . , the [Department of Transportation] shall suspend the operating privilege of the person . . . for a period of 12 months." 75 Pa. C.S. § 1547(b)(l)(i) (emphasis added). Section 1613 of the Vehicle Code extends the consequences for a refusal under Section 1547 to that same driver's commercial license. *Id*. § 1613(d.1), (d.3). The commercial disqualification is for the same period as would be imposed for a conviction for the offense for which testing was requested—in this case, a one-year suspension for DUI. *See id*. § 1611(a)(1).

meaningful opportunity to consent or refuse. Upon review, we reverse and reinstate Licensee's operating privileges.

On April 22, 2022, Pennsylvania State Trooper Ethan Coulter responded to a single-vehicle accident, where he found Licensee and a passenger standing behind Licensee's wrecked vehicle. Licensee admitted drinking that day and field sobriety tests indicated he was intoxicated. Licensee was unable to successfully perform a preliminary breath test. Trooper Coulter arrested Licensee for DUI and transported him to the York County booking center. Licensee became verbally aggressive and disruptive during the drive. This behavior continued at the booking center, where Trooper Coulter read Licensee the implied consent warnings from DOT's DL-26B Form over Licensee's continual interruptions. Licensee did not agree to take a blood test after Trooper Coulter read the warnings, so Licensee was released from custody.

By notices mailed July 4, 2022, DOT suspended Licensee's personal driving privilege and disqualified his commercial driving privilege, both for a period of 12 months effective August 8, 2022,[2] based on his chemical test refusal. Licensee timely appealed to the trial court, which held a *de novo* suspension hearing on July 20, 2023.

At the hearing, DOT presented Trooper Coulter's testimony. Licensee did not testify. Regarding the issue on appeal (Licensee's refusal of the chemical test) Trooper Coulter testified:

---

[2] The trial court granted Licensee's motion for supersedeas of the disqualification of his commercial operating privilege on August 8, 2022. In its July 21, 2023 order now on appeal, the trial court reinstated the suspension. Licensee has not sought supersedeas in this Court and it is not clear from the record whether DOT issued a new notice of suspension and/or disqualification after the trial court's final order.

A. Once we got to the booking center, I read [Licensee] the DL-26B form.  While I was reading the form to [Licensee], he was irate and argumentative and he continuously interrupted me by yelling FU, FU, while I was reading the form to him.

. . . .

Q. In the middle of the page there are four paragraphs of warnings. You mentioned that you—I think that you mentioned that you read the warnings to him. Are those the warnings that you read?

A. They are.

Q. Did you read them word for word?

A. I did.

Q. Underneath there are two signatures. Are they your signatures?

A. They are.

Q. And there seems to be a sign up place for the driver to sign, there is just an X there. What happened there?

A. With [Licensee]'s aggressive demeanor, I neglected to have him sign it. It slipped my mind and I made a mistake there.

Q. But your signature indicates that you read all of the warnings to him?

A. I did.

. . . .

Q. Because—and you actually asked him if he would submit to testing?

A. Yes, I believe I did.

Reproduced Record (R.R.) at 16a-18a. Trooper Coulter stated that Licensee did not seem affected by any physical injury and did not ask questions about the warnings. *Id.* at 18a-19a.

On cross-examination, Trooper Coulter testified:

Q. I believe your testimony on direct was that you believed that you asked him to take the test; is that correct?

A. Yes, I believe at the end—typically, typically, when I read someone the DL- 26, I read them all four lines. I ask them if they understand the four lines, and if they have any questions about them and I asked [sic] if they would give a blood test. Given the nature of [Licensee]'s impression, and the fact that this was over a year ago now, I don't exactly remember how it ended up.

Q. So—I notice that you are choosing your words very careful. I want to make sure that I'm not mistaken in anything. You don't specifically recall asking him to take the test; is that fair?

A. Correct.

R.R. at 22a.

On DOT's motion, the trial court admitted the DL-26B Form into evidence. R.R. at 4a-5a. The form includes instruction to the arresting officer, followed by warnings the officer is to read to the licensee, as follows:

> NOTE TO OFFICER: Please read all of these warnings in their entirety to the operator even if the operator is not listening, is talking over you or is otherwise disruptive . . . . *You must still give the operator an opportunity to take the blood test after you finish reading these warnings to the operator.* The refusal of the operator to sign this form is not a refusal to submit to the blood test . . . .

4

It is my duty as a police officer to inform you of the following:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I *am requesting* that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent *when asked to submit to a blood test*, you will have refused the test.

R.R. at 64a (emphasis added); *see also id.* at 66a (legible copy).

The trial court credited Trooper Coulter's testimony that he had read the DL-26B Form and concluded that Paragraph 2 of the DL-26B Form constitutes, on its own, a request to submit to chemical testing. R.R. at 31a-32a (hearing transcript), 60a-61a (trial court's 1925(a) opinion). The trial court did not make findings or credibility determinations about whether Trooper Coulter asked Licensee, after reading the warnings, to take a chemical test, and it did not rely on that testimony; it concluded that the warnings themselves were the first request, and Trooper Coulter was not required to ask a second time. *Id.* On that basis, and finding

5

DOT met the other elements of its burden, the trial court dismissed Licensee's appeal and reinstated the suspension and disqualification of his licenses.

On appeal to this Court,[3] Licensee argues that the trial court erred in holding that a bare reading of the DL-26B Form constitutes a request for testing. Relatedly, Licensee argues nothing in the record establishes conduct by Licensee that could constitute a refusal after Trooper Coulter read the warnings. DOT argues that Paragraph 2 of the DL-26B Form is itself a request for testing, or alternatively, that Trooper Coulter's testimony regarding his usual practice supports the trial court's conclusion that Licensee refused a request for testing.

Among the statutory elements DOT must establish to sustain a license suspension is that the driver "[*was*] *requested* to submit to chemical testing *and* refuse[d] to do so." 75 Pa. C.S. § 1547(b)(l) (emphasis added); *accord id.* § 1613(c) (applying to "a person requested to submit to a test"); *Park*, 178 A.3d at 280. Apart from reading the implied consent warnings, the officer need only "provide a licensee with a meaningful opportunity to comply with the Implied Consent Law." *Park*, 178 A.3d at 281. It is true that, once an officer has provided that meaningful opportunity, "anything substantially less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal." *Id.*

Our Courts have assumed that a meaningful opportunity to comply entails an explicit request to submit to testing made *after* the implied consent warnings are read. *See, e.g., Nardone v. Dep't of Transp., Bureau of Driver*

---

[3] This Court's review in license suspension matters "is limited to determining whether the trial court's necessary findings of fact were supported by substantial evidence and whether the trial court committed an error of law or otherwise abused its discretion." *Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 279 n.2 (Pa. Cmwlth. 2018). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Purcell v. Dep't of Transp., Bureau of Driver Licensing*, 689 A.2d 1002, 1004 n.3 (Pa. Cmwlth. 1997).

6

*Licensing*, 130 A.3d 738, 744-45, 750-51 (Pa. 2015) (stating that "officers explained [licensee's] implied consent rights and obligations before requesting that he submit to a chemical test of blood," and repeatedly noting that an "official request for testing" is a precondition to refusal); *Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 15-16 (Pa. Cmwlth. 2010) ("[Officer] read [l]icensee all four paragraphs of the DL–26 Form word for word, and requested [l]icensee to submit to a blood test."). The opportunity to consent is a necessary precondition to any refusal, whether the refusal is explicit or inferred from conduct or silence. *See Dep't of Transp. v. Renwick*, 669 A.2d 934, 936 (Pa. 1996) ("Officer . . . read the consent form to [licensee]" and "[w]hen he requested that she submit to the blood test, licensee closed her eyes and turned her face away," and this was a refusal (emphasis added)); *Nardone*, 130 A.3d at 748-49 (reaffirming *Renwick*).

Consistent with that caselaw, a post-warning request for testing is both implicit in and expressly required by the implied consent warnings. Implicitly, the purpose of the warnings is to allow drivers to make informed decisions about whether to take a chemical test, so we require the warnings to be read when the licensee is conscious and in a language the licensee understands. *Vazquez-Santiago v. Dep't of Transp., Bureau of Driver Licensing*, 268 A.3d 16, 31 n.14 & accompanying text (Pa. Cmwlth.) (en banc), *appeal denied*, 282 A.3d 371 (Pa. 2022). A licensee asked to submit to testing before the warnings are fully read is no more able to make an informed decision than a licensee who is unconscious or does not speak the language. *See id.* And expressly, the DL-26B Form tells officers that they "must still give the operator an opportunity to take the blood test after [they] finish reading the[] warnings." R.R. at 66a. Although Paragraph 2 of the DL-26B Form states in the present continuous tense that the officer "[is] requesting" a test,

Paragraph 4 later contemplates—and invites licensees to contemplate—a future request that, "when asked," will trigger a future obligation to respond—a request the officer "must still give" after reading the warnings. *Id.* If we conclude that Paragraph 2 of the DL-26B Form is a "request" to which licensees must respond, we invite licensees to make a decision when not fully informed by the warnings and uncertain whether the promised request has yet been made.[4] Thus, we hold that, for a licensee to have the meaningful opportunity to consent to a request for a chemical test under the Implied Consent Law, the arresting officer must make an express request for chemical testing after fully reading the implied consent warnings from the DL-26B Form as it is presently constituted. The trial court erred in concluding otherwise.

Given that holding, we turn to DOT's suggestion that we could affirm the trial court on this same issue, but on another ground: that Trooper Coulter testified that he separately requested a chemical test after reading the warnings to Licensee. We disagree for two reasons.

First, Trooper Coulter's testimony on this point is not consistent. He testified that he "believes [he] did" make a separate request, but on cross-examination he candidly clarified that his answer only reflected his usual practice, and that he did not remember whether he made a separate request. R.R. at 19a, 23a. The trial court did not consider that testimony as a basis for finding a "request" so it did not make the necessary credibility determinations. Even though we may affirm

---

[4] Consider a hypothetical licensee who wishes to act respectfully toward an arresting officer and knows the law, but does not have the DL-26B Form committed to memory. When the officer reads Paragraph 2 of the Form and then continues reading, how should the licensee respond? Should she interrupt the officer to avoid a deemed refusal by silence, since Paragraph 2 seems like it might be a "request"? Or should she respectfully let the officer continue reading? And if she waits and the officer makes no separate request after the warnings, how will she know when the officer has completed the warnings so that she can respond?

8

on any basis in the record, we do not apply the right-for-any-reason doctrine where we would need to "weigh evidence and engage in fact[]finding or make credibility determinations." *In re A.J.R.-H.*, 188 A.3d 1157, 1176 (Pa. 2018); *see also Park*, 178 A.3d at 284 ("Determinations as to the credibility . . . are matters solely within the province of the trial court as fact[]finder."). Thus, at most, we could vacate the trial court's decision and remand for it to determine which portions of Trooper Coulter's testimony the trial court finds credible.

But second, no remand is warranted here because, however credited, the testimony of record could not substantially support a finding that Trooper Coulter made a post-warning request. Trooper Coulter did not merely offer conflicting testimony; he essentially changed his answer on cross-examination, explaining that he did not know if he asked Licensee to take a chemical test after reading the warnings. We view the evidence in the light most favorable to the party that prevailed before the trial court, but neither we nor the factfinder can make illogical or unreasonable inferences from that evidence. *See Sanders v. Unemployment Comp. Bd. of Rev.*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999). Here, it would be illogical for the trial court to conclude that Trooper Coulter made a post-warning request when he specifically clarified that he did not recall doing so.

We conclude that the trial court erred in determining that Licensee was requested to submit to chemical testing. Accordingly, we reverse the trial court's order.

_____
MATTHEW S. WOLF, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donnell O. Parker,          :

         Appellant     :

                    :

        v.              :   No. 929 C.D. 2023

                    :

Commonwealth of Pennsylvania,   :

Department of Transportation,    :

Bureau of Driver Licensing      :

## **O R D E R**

AND NOW, August 8, 2024, the July 21, 2023 order of the Court of Common Pleas of York County is REVERSED and Appellant's personal and commercial operating privileges are hereby reinstated.

 

_____

MATTHEW S. WOLF, Judge