# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Russell Alan McGreevy | : | |
| | : | No. 1234 C.D. 2023 |
| v. | : | |
| | : | Submitted: March 4, 2025 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE MATTHEW S. WOLF, Judge

***<u>OPINION NOT REPORTED</u>***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                             **FILED: March 28, 2025**

          The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the order entered October 4, 2023, in the Court of Common Pleas of Washington County (trial court), which granted the statutory appeal of Russell Alan McGreevy (Licensee) from an 18-month suspension of his driving privileges. The Department imposed the suspension pursuant to Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(ii), which is commonly known as the Implied Consent Law, as a result of Licensee's

refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance (DUI).[1]  After careful review, we affirm.

## I. BACKGROUND[2]

On July 29, 2022, police officer Austin Kline (Officer Kline) received an emergency dispatch regarding an accident involving a self-balancing electric skateboard in Washington County.  Officer Kline arrived on the scene within 10 minutes, where he observed Licensee, who had sustained a head injury, and a friend of Licensee, who had called 911.  Officer Kline noted that Licensee was bleeding from the back of his head, appeared disoriented, had alcohol on his breath, exhibited bloodshot eyes, and was swaying in his movements.  Despite attempts to speak with Licensee, Officer Kline was unable to obtain any material evidence regarding the circumstances of the accident.  Although Licensee expressed a desire not to go to

---

[1] 75 Pa.C.S. § 1547.  Section 1547(b) of the Vehicle Code sets forth the civil penalties for a driver arrested for driving under the influence of alcohol (DUI) who refuses to submit to chemical testing.  Section 1547(a), (b)(1)(ii) states in relevant part:

> **(a) General rule**.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection . . . 3802 (relating to driving under the influence of alcohol or controlled substance) . . . .
> **(b) Civil penalties for refusal**.--
> (1) if any person placed under arrest for a violation of Section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted upon notice by the police officer, [DOT] shall suspend the operating privilege of a person as follows:
> (ii) For a period of 18 months . . . .

75 Pa.C.S. § 1547(a), (b)(1)(ii).

[2] We derive the background from the trial court's opinion, which is supported by substantial evidence of record.  *See* Trial Ct. Op., 10/3/23.

the hospital, paramedics at the scene insisted that he be transported to the hospital for medical evaluation.

Officer Kline followed the paramedics to the hospital and, after a CT scan was performed on Licensee, attempted to obtain Licensee's consent for a blood draw, suspecting that Licensee was operating his electric skateboard under the influence of alcohol. Officer Kline informed Licensee that he was going to read the DL-26B form[3] to obtain consent for the blood draw. While Licensee's eyes were open when Officer Kline began speaking, Licensee closed them as Officer Kline started reading the DL-26B form. Officer Kline proceeded to read the entire form aloud, but Licensee remained unresponsive, with his eyes closed, and he did not respond when asked whether he would sign the form or consent to the blood draw.

Immediately afterward, a nurse performed a "sternum rub,"[4] applying significant and painful pressure to Licensee's chest, which caused him to open his

---

[3] The DL-26B form's blood testing warnings read as follows:

It is my duty as a police officer to inform you of the following:
1. You are now under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
2. I am requesting that you submit to a chemical test of blood.
3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.
4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

Hr'g Tr., 2/14/24, Ex. 1 (DL-26B form).
[4] It is important to note that there was no testimony from an expert medical witness, so the extent of Licensee's head injury is unknown. However, a sternum rub is defined as a:

3

eyes. However, Officer Kline could not recall whether he again asked Licensee whether he would sign the form or consent to a blood draw after he reopened his eyes. Officer Kline recorded the interaction as a refusal and subsequently left the hospital.

Then, on August 8, 2022, Licensee received a notice from DOT that his driver's license would be suspended for 18 months for his refusal to submit to a blood draw. Licensee timely filed a petition for appeal, and the trial court conducted a hearing. Based on the facts set forth above, the trial court reasoned that, given Licensee's unresponsiveness in the context of suffering a head injury and being transported to the hospital by paramedics, it was equally plausible that he was not alert when Officer Kline read the DL-26B form or when Licensee was asked to sign it. Therefore, the trial court concluded that the Commonwealth failed to prove that Licensee had refused the blood draw because the Commonwealth had not proven that Licensee was provided with a meaningful opportunity to submit to the blood test.

DOT timely appealed to this Court.

---

technique to test an unconscious person's responsiveness. It involves giving a firm rub on the sternum . . . to see if there's a reaction. It's a painful or noxious stimulus meant to provoke a response. When someone is unresponsive to gentler attempts at interaction, like talking to them or giving them a gentle touch, a sternum rub can be a way to see if they're still alive. It's often useful when someone loses consciousness due to a brain injury or an overdose. The Glasgow Coma Scale, a common neurological assessment used in healthcare, includes a sternum rub as one of its components.

*The Importance of a Sternum Rub*, Elite Ambulance (June 8, 2023), https://eliteamb.com/sternum-rub/ (last visited Mar. 27, 2025).

## II. ISSUE

DOT asserts that the trial court erred in granting Licensee's appeal because Licensee was given a meaningful opportunity to comply with the chemical test and his silence constituted a refusal. *See generally* DOT's Br.

## III. DISCUSSION[5]

DOT asserts that Licensee was given a meaningful opportunity to comply with the chemical test when Officer Kline read the DL-26B form aloud and requested Licensee's signature. *See id.* at 13, 17-21. According to DOT, because Licensee failed to respond, DOT contends that his silence constituted a refusal, thereby establishing DOT's *prima facie* case and shifting the burden to Licensee to prove that he was incapable of making a knowing and conscious decision. *See id.* at 13, 21-25.

Conversely, Licensee asserts that he was not provided with a meaningful opportunity to comply with Officer Kline's request for a chemical test, and, therefore, DOT failed to meet its burden of proving refusal. *Id.* at 3, 6-8. Licensee contends that the evidence demonstrates he was neither alert nor awake when Officer Kline read the DL-26B form, and after a nurse had to perform a sternum rub to awaken him, Officer Kline failed to provide him an opportunity to respond before deeming his conduct a refusal. *See* Licensee's Br. at 3, 5-8.

To sustain a license suspension, DOT has the burden of establishing that the licensee

> (1) was arrested for drunken driving by a police officer having
> reasonable grounds to believe that the licensee was driving under the

---

[5] Our review in a license suspension case is limited to whether the factual findings of the trial court are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion. *See Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

5

influence, (2) was requested to submit to a chemical test, (3) refused to do so[,] and (4) was warned that refusal would result in license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she was either not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (internal citation omitted). It is undisputed in this case that (1) Licensee was arrested for drunken driving based on reasonable grounds to believe that he was operating his electric skateboard under the influence; (2) Officer Kline requested that Licensee submit to chemical testing, and (3) by reading the DL-26B form, Officer Kline warned Licensee that his refusal to submit to a chemical test would result in a license suspension. Thus, the sole question is whether Licensee's conduct constituted a refusal to submit to chemical testing. Here, DOT challenges the trial court's conclusion that DOT did not satisfy its burden of proving refusal.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015).[6] We must view the evidence in the light most favorable to the party that prevailed before the trial court. *Giannopoulos*, 82 A.3d at 1095.

Our Supreme Court has stated that "any response from a licensee that is anything less than an unqualified, unequivocal assent to submit to testing constitutes a refusal, subjecting the licensee to the [] suspension." *Nardone*, 130 A.3d at 748 (cleaned up); *see also Factor v. Dep't of Transp., Bureau of Driver*

---

[6] *See also Giannopoulos*, 72 A.3d at 1095 (stating "we may only review the trial court's findings to determine if they are supported by substantial, competent evidence. As long as sufficient evidence exists that is adequate to support the facts found by the trial court as fact-finder, we are precluded from overturning those findings.") (quoting *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008)).

*Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018) (observing that "Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto"). "Further, an explicit refusal is not required to find a licensee refused to consent to chemical testing; a licensee's conduct may constitute a refusal." *Factor*, 199 A.3d at 497 (cleaned up). Thus, the question of refusal turns on a consideration of whether Licensee's overall conduct demonstrated an unwillingness to assent to an officer's request for chemical testing. *Nardone*, 130 A.3d at 749; *see also Dep't of Transp. v. Renwick*, 669 A.2d 934 (Pa. 1996) (noting Licensee engaged in "gamesmanship" by repeatedly ignoring requests to submit to chemical testing from two separate officers, closing her eyes and turning her head to avoid responding, before momentarily stating she would consent to the chemical test).

Although the Implied Consent Law does not require police officers to spend time and effort to persuade a licensee to consent or to wait and see if he ultimately changes his mind, a licensee must be given a "meaningful opportunity" or a "reasonable and sufficient opportunity" to comply with the request for chemical testing. *Nardone*, 130 A.3d at 749. DOT has the burden of showing that the licensee was offered a meaningful opportunity to submit to chemical testing in order to prove refusal. *Quigley v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 349, 353 (Pa. Cmwlth. 2009); *compare Solomon v. Dep't of Transp., Bureau of Driver Licensing*, 966 A.2d 640, 642 (Pa. Cmwlth. 2009) (finding no meaningful opportunity to comply where an officer declared a refusal immediately after the licensee uttered brief expletives and ambiguously responded, "do what you've got to do," to the chemical testing request), *with Boseman v. Dep't of Transp., Bureau of Driver Licensing*, 157 A.3d 10, 19 (Pa. Cmwlth. 2017) (holding that a meaningful

opportunity was provided where the licensee initially consented to a blood draw but later withdrew consent before arriving at the hospital).

A meaningful opportunity to comply with the Implied Consent Law is a necessary precondition to any refusal, whether the refusal is explicit or inferred from conduct or silence. *Parker v. Dep't of Transp., Bureau of Driver Licensing*, 322 A.3d 996, 1000 (Pa. Cmwlth. 2024). This requirement ensures that a licensee has a knowing and conscious choice to either submit to the test or face the penalties for refusal. *Commonwealth v. Myers*, 164 A.3d 1162, 1172 (Pa. Cmwlth. 2017). An unconscious individual cannot make a knowing and conscious choice to refuse a chemical test, and thus, the Implied Consent Law does not authorize a blood test under such circumstances. *Id.*

Here, Licensee sustained a head injury to the extent that paramedics at the scene of the accident insisted Licensee be transported to the hospital and undergo a CT scan. *See* Hr'g Tr., at 11-12. When Officer Kline ultimately read the DL-26B warnings, Licensee appeared unresponsive such that hospital staff deemed it necessary to administer a sternum rub. *Id.* at 17-18, 26. Given these circumstances, Officer Kline's failure to reinitiate the consent process following the sternum rub, when Licensee had reopened his eyes, undermines DOT's position that Licensee had a reasonable and sufficient opportunity to comply with the chemical test requested by Officer Kline. Viewing this evidence in the light most favorable to Licensee as the prevailing party, *see Giannopoulos*, 82 A.3d at 1095, we conclude that substantial evidence supports the trial court's conclusion that DOT failed to prove Licensee's refusal. *Parker*, 322 A.3d at 1000; *Nardone*, 130 A.3d at 749; *Quigley*, 966 A.2d at 642.

8

Further, although the extent and severity of Licensee's head injury is unknown, we agree with the trial court that it is equally plausible that Licensee was not alert when Officer Kline read the DL-26B form. *See* Trial Ct. Op., 10/3/23, at 6. Due to this uncertainty and DOT's resultant failure to prove a refusal, Licensee was not required to demonstrate his inability to make a knowing and conscious refusal. *See Giannopoulos*, 82 A.3d at 1094. Consequently, under these specific circumstances, a license suspension cannot be sustained. *Id.*

## IV. CONCLUSION

Substantial evidence supports the trial court's finding that Licensee was not given a meaningful opportunity to comply with the chemical test requested by Officer Kline. Therefore, DOT failed to prove Licensee's refusal. *Giannopoulos*, 82 A.3d at 1094; *Nardone*, 130 A.3d at 749; *Parker*, 322 A.3d at 1000. Accordingly, we are compelled to affirm the trial court.

_____
**LORI A. DUMAS, Judge**

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell Alan McGreevy           :
                                     :   No. 1234 C.D. 2023
               v.                 :
                                     :
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing,      :
             Appellant      :

## O R D E R

AND NOW, this 28th day of March, 2025, the order entered by the Court of Common Pleas of Washington County on October 4, 2023, is AFFIRMED.

 

_____

**LORI A. DUMAS, Judge**