# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Patton,                              :
        Appellant                    :
                          :
        v.                           :
                          :
Commonwealth of Pennsylvania,               :
Department of Transportation,               :      No. 1608 C.D. 2018
Bureau of Driver Licensing                  :      Submitted: October 11, 2019


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: December 16, 2019


Daniel Patton (Licensee) appeals from the Montgomery County Common Pleas Court's (trial court) November 26, 2018 order denying his license suspension appeal. Essentially, Licensee presents one issue for this Court's review: whether Licensee refused to submit to chemical testing.[1] After review, we affirm.

On May 3, 2015, at approximately 10:30 p.m., Lower Merion Police Department Officer Peter Kondan (Officer Kondan) investigated a telephone report of an intoxicated person next to a vehicle in the parking lot of the Sunoco gas station located on Belmont Avenue in Bala Cynwyd, Lower Merion Township, Montgomery County. When he arrived at the Sunoco parking lot, Officer Kondan observed the

---

[1] Licensee presents two issues in his Statement of Questions Involved: (1) whether the trial court erred by denying Licensee's appeal where the evidence established that the officer did not provide him with a meaningful opportunity to submit to chemical testing; and (2) whether the trial court erred by denying Licensee's appeal where the officer advised Licensee that he had no right to speak to an attorney. *See* Licensee Br. at 4. These issues are subsumed in this Court's restatement of the issue.

person (later identified as Licensee) and the vehicle meeting the caller's description. Officer Kondan watched Licensee as he drove out of the parking lot and along Belmont Avenue with his right turn signal on and his passenger door ajar. Officer Kondan stopped Licensee.

When Officer Kondan approached Licensee's vehicle, he detected a strong odor of alcohol emanating from it. He asked Licensee about the open passenger door and, when Licensee answered, Officer Kondan smelled a strong odor of alcohol on Licensee's breath, and also observed "that his speech was slurred, his eyes were bloodshot and glassy and his movements and gestures, as he spoke, were slow and lethargic." Notes of Testimony, November 26, 2018 (N.T.) at 7. In response to Officer Kondan's request for his personal information, Licensee offered his name and birthdate, and mumbled what Officer Kondan thought was two different addresses.[2] Officer Kondan asked Licensee to repeat himself several times because "he was speaking unintelligibly[.]" N.T. at 8. When Officer Kondan asked Licensee if he drank any alcohol that evening, Licensee admitted he had one drink.[3] Officer Kondan had Licensee perform seven field sobriety tests, during which Licensee "displayed poor balance and coordination . . . and an inability to follow simple instructions[.]" N.T. at 9. As a result, Officer Kondan arrested Licensee for driving under the influence of alcohol (DUI).

Officer Kondan recalled that, as he attempted to handcuff Licensee, Licensee became "rigid and belligerent and refused to cooperate[,]" and continued to

---

[2] Officer Kondan ran Licensee's license plate and discovered that the car Licensee was driving was registered to a holding company.

[3] In order to confirm that Licensee's demeanor was due to alcohol consumption, Officer Kondan asked Licensee if he was suffering from any medical conditions. Licensee responded that he was a Type II diabetic, but he had not taken his medication in several months. Officer Kondan offered medical treatment, but Licensee refused. Officer Kondan concluded based on his experience as a Type I insulin-dependent diabetic that Licensee did not require medical attention for diabetes at that time. *See* N.T. at 7, 18-21.

be belligerent and shouted at him and other officers even after he was placed in the patrol vehicle. N.T. at 10. Lower Merion Police Sergeant Thomas Luke (Sergeant Luke) read the implied consent warnings (Form DL-26)[4] to Licensee. Licensee agreed to a blood test, but requested it take place at Bryn Mawr Hospital (Hospital).

After Licensee gave the Hospital personal information that "was different from the original information that [Licensee] gave on [the] scene[,]" Officer Kondan informed Licensee that he "would have to rush to the police station to . . . us[e] the life scan fingerprinting . . . to determine [Licensee's] identity." N.T. at 11. According to Officer Kondan, Licensee initiated a "brief struggle" in the Hospital lobby as Officer Kondan attempted to place Licensee back in handcuffs, thereby requiring Officer Kondan and another officer to restrain him. N.T. at 12. When Sergeant Luke arrived at the Hospital, he asked Licensee if he was going to consent

---

[4] "The [Form] DL-26 [] contains the chemical test warnings required by Section 1547 of the Vehicle Code, [75 Pa.C.S. § 1547,] which are also known as the implied consent warnings." *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 745 n.2 (Pa. Cmwlth. 2013). The Form DL-26 Sergeant Luke read to Licensee stated, in pertinent part:

> 1. You are under arrest for [DUI] . . . in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of BLOOD . . . .
>
> 3. If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. . . . In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties . . . .
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

N.T. Ex. C-1 at 5.

to a blood test and, "after [Licensee] settled down, [he] did [again] agree to submit to the blood test[.]" N.T. at 12.

However, as a nurse proceeded to draw Licensee's blood, he refused to let her and asked to speak to his wife. Sergeant Luke repeated the Form DL-26 instructions to Licensee. Licensee was again asked whether he was going to undergo testing, in response to which he repeated that he wanted to speak to his wife. After Licensee was asked two or three additional times whether he was going to submit to the blood test, he remained silent. Sergeant Luke interpreted Licensee's conduct as a refusal and so specified that on the Form DL-26.[5] *See* N.T. Ex. C-1 at 5.

On May 21, 2015, the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) notified Licensee that his driver's license privileges would be suspended for a period of one year, effective June 25, 2015, due to his refusal to submit to a chemical test incident to his DUI arrest. On June 19, 2015, Licensee appealed from the suspension to the trial court. The trial court held a hearing on November 26, 2018,[6] at which Officer Kondan and Sergeant Luke testified regarding the events that occurred on May 3, 2015 that led to Licensee's arrest and Sergeant Luke's request that Licensee submit to chemical testing. Licensee did not attend the hearing or present any contrary evidence.[7]

On November 26, 2018, the trial court denied Licensee's appeal. Licensee appealed to this Court.[8] On December 7, 2018, the trial court ordered Licensee to file a concise statement of the errors complained of on appeal pursuant to

---

[5] Licensee refused to sign the Form DL-26.

[6] The hearing was originally scheduled for September 21, 2015, but was rescheduled approximately 13 times before it was finally held on November 26, 2018.

[7] Licensee's counsel represented to the trial court that he was authorized to proceed on Licensee's behalf. *See* N.T. at 3.

[8] "Our review is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or abused its discretion." *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644, 648 n.3 (Pa. Cmwlth. 2018).

4

Pennsylvania Rule of Appellate Procedure 1925(b) (Rule 1925(b) Statement). Licensee filed his Rule 1925(b) Statement with the trial court on December 19, 2018. The trial court filed its opinion on May 13, 2019.

Licensee argues that the trial court erred by concluding that he refused to submit to chemical testing. He specifically contends that obstacles were placed in his way and, thus, he was not afforded a meaningful opportunity to submit to the test.[9]

Initially,

> [t]o sustain a license suspension under Section 1547(b) of the Vehicle Code, [the Department] has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once [the Department] meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

---

[9] The Department argues that Licensee waived this argument by failing to include it in his Rule 1925(b) Statement. *See* Department Br. at 14 n.4 However, in his Rule 1925(b) Statement, Licensee asserted:

> 1. The trial court erred in denying [Licensee's] driver license suspension appeal since the Department failed to establish that [he] refused to submit to a chemical test of blood. To the contrary, [Licensee] agreed to submit to blood [sic] requested on multiple occasions at a hospital of his own choosing for that very purpose.

> 2. The trial court erred in denying [Licensee's] driver license suspension appeal where it was the police who decided to vitiate [his] consent by telling [Licensee], after he consented, that he would be taken to the police station to confirm his identity or address before blood was drawn.

Licensee Rule 1925(b) Statement at 1. Pennsylvania Rule of Appellate Procedure 1925(b)(4)(v) specifies that "[e]ach error identified in the [Rule 1925(b)] Statement will be deemed to include every subsidiary issue that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(4)(v). This Court concludes that whether Licensee had a meaningful opportunity to submit to the test is subsidiary to whether Licensee's conduct constituted a refusal and, thus, Licensee did not waive that issue.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing*, 788 A.2d 443, 445 (Pa. Cmwlth. 2001) (citation omitted)).

Here, Licensee does not challenge that he was arrested by Officer Kondan, who had reasonable grounds upon which to believe that Licensee was driving under the influence,[10] that Sergeant Luke asked Licensee to submit to chemical testing, and that Sergeant Luke read him the Department's Form DL-26 warning him that refusal to do so would result in a license suspension. Therefore, the only question before this Court on appeal is whether, under the circumstances, Licensee refused to submit to chemical testing.

"What constitutes a 'refusal' for purposes of [what is commonly referred to as the Implied Consent Law] is not defined or otherwise described under Section 1547 [of the Vehicle Code]." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Rather,

---

[10] Licensee challenges Officer Kondan's description of the May 3, 2015 stop leading to Licensee's DUI arrest because Officer Kondan's hearing testimony about where he initially saw Licensee (i.e., next to or in his car) at the Sunoco station, differed from his testimony at Licensee's September 8, 2016 criminal trial. This Court has ruled:

> 'It is not necessary for an officer to actually witness a licensee operating a vehicle in order to have reasonable grounds to place him under arrest for [DUI].' *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 437 (Pa. Cmwlth. 2014) []. However, 'at the very least, there must be some objective evidence that the motorist exercised control over the movement of the vehicle at the time he was intoxicated.' *Banner* [*v. Dep't of Transp., Bureau of Driver Licensing*], 737 A.2d [1203,] 1207 [(Pa. 1999)].

*Marnik v. Dep't of Transp., Bureau of Driver Licensing*, 145 A.3d 208, 212 (Pa. Cmwlth. 2016) (emphasis omitted). The trial court found credible Officer Kondan's testimony that he observed Licensee drive his car away from the Sunoco station. Thus, Officer Kondan had reasonable grounds to arrest Licensee for DUI.

> [t]he question of refusal by a licensee to consent to chemical testing 'turn[s] on a consideration of whether the [licensee's] overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing.' *Nardone*, 130 A.3d at 749.

> Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto.

*Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 496-97 (Pa. Cmwlth. 2018).

This Court has held that "a licensee's refusal need not be expressed in words; a licensee's conduct may constitute a refusal." *Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018). More specifically, any "conduct inconsistent with verbal acquiescence" may demonstrate an unwillingness to assent. *Nardone*, 130 A.3d at 749. "If a licensee remains silent after receiving the implied consent warnings, that silence constitutes a refusal to submit." *Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 19 (Pa. Cmwlth. 2010).

> However,

> [o]nly when [the Department] meets its burden of proving that a motorist was given a 'meaningful opportunity' or a 'reasonable and sufficient opportunity' to comply with the chemical testing requirement of the Implied Consent Law may a court conclude that a motorist's failure to complete the requested test constitutes a refusal.

*Nardone*, 130 A.3d at 749.

Officer Kondan testified:

> A. [Licensee] was escorted back into the treatment area, I guess -- I don't know what it's called. We are in a room and [Licensee] began questioning as to whether or not he was going to submit to the blood test. Sergeant Luke repeated the instructions as given on a [Form] DL-26,

7

asking him, again, if he was going to take the test. And at first [Licensee] requested to speak with his wife before telling us yes or no, giving us an answer yes or no to the blood test.

He was asked, I would say, at least two times if he was going to submit to the test. One time he asked, again, for his wife; another time, he remained silent. Finally[,] after at least one or two more times, I don't know exactly how many, he was asked again if he would be willing to submit to the blood test, [Licensee] remained silent, at which time it was deemed a refusal.

Q. What happened next at that point?

A. At that point [Licensee] was released from the [H]ospital, transported back to the police department, and we asked if he had anyone that could pick him up at the time. [Licensee] couldn't think of anyone to pick him up at the time, therefore, he was placed into a holding cell.

N.T. at 12-13. Officer Kondan acknowledged that Licensee never verbally refused to take the blood test.

Sergeant Luke testified that he read the Form DL-26 to Licensee twice – where Licensee was initially stopped and again in the Hospital.

A. . . . When I arrived [at the Hospital], I . . . calmed [Licensee] down and asked him if he was still taking the blood test, and he said yes. So then we proceeded in to check him in and see a nurse.

Q. What happened at that point?

A. So we went back to a room where [Licensee] . . . was behind a curtain where he had his own room. It was a nurse in there and myself and the two officers, Ma[r]rone[11] and Kondan, and as the nurse proceeded to draw blood, [Licensee] refused to allow her to.

. . . . [Licensee] asked to see his wife. Then I read him the [Form DL-26] verbatim again. And then he responded in silence when we asked him to submit. And asked him

_____

[11] Officer Marrone's full name does not appear in the record.

8

again, will you submit to this blood test now, again silence. I deemed it a refusal and asked that he sign the refusal form, and he refused to sign that. So I wrote refusal.

N.T. at 36-37; *see also* N.T. Ex. C-1 at 5.

Here, without offering contrary evidence, Licensee essentially asks this Court to reweigh the evidence and conclude that the Department failed to establish its burden of proof. However, this Court is not vested with the authority to do so. The trial court found that Officer Kondan's and Sergeant Luke's testimony "was credible on every material point on which they testified, and was largely unrebutted on these points except through argument and cross-examination . . . ." Trial Ct. Op. at 16.

This Court has ruled:

> It is well settled that the trial court's credibility determinations in a license suspension appeal will not be second-guessed on appeal. Determinations as to the credibility of witnesses and the weight assigned to the evidence are matters solely within the province of the trial court as fact-finder. Conflicts in the evidence are for the trial court to resolve and are thus improper questions for appellate review. Therefore, we must determine whether a licensee refused chemical testing based on the facts found by the trial court rather than those the appellant prefers.

*Park*, 178 A.3d at 284 (citations omitted); *see also Nardone*, 130 A.3d at 748 ("The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court.").

In the instant appeal,

> [the trial c]ourt found, based on its assessment of the credibility of the witnesses at the hearing and the totality of the evidence, that [Licensee] refused the blood test. The [trial c]ourt acknowledges that [Licensee] several times verbally agreed to take the test. But when push came to shove, so to speak, and the test was imminently about to be performed, he refused the test by word, action, and omission, by asking to speak to his wife before taking the test, and by remaining silent when again asked after the [Form] DL-26 warnings had been read to him once more.

> The officers[] patiently ask[ed] him repeatedly whether he would take the test, and possible confusion about whether he would, arose mostly from his own labile and volatile words, behavior, and ultimate silence, rather than from any attempt by the officers to obstruct the blood draw or 'trick' him into a refusal.

Trial Ct. Op. at 18. Because Licensee's conduct after Sergeant Luke read him the implied consent warnings in the Hospital was not an unqualified, unequivocal assent to submit to chemical testing, the trial court properly concluded that Licensee refused chemical testing and denied his appeal.[12]

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[12] Licensee also argues that the trial court erred by denying his appeal under circumstances in which the officers informed him that he had no right to speak to an attorney. However, in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989), the Pennsylvania Supreme Court ruled:

> [W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a [chemical] test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a [chemical] test, the police instruct the arrestee that such rights are inapplicable to the [chemical] test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*Id*. at 878. *O'Connell* is still good law. Licensee admitted in his brief he "is aware that the status of the law in Pennsylvania is that a motorist does not have a right to consult with an attorney or anyone else before deciding whether to submit to a chemical test[,]" yet "raises the issue here to preserve it in the event he seeks to address it in the Pennsylvania Supreme Court." Licensee Br. at 18. Because Licensee acknowledges the well-settled law, this Court need not address this issue herein.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel Patton,                              :
                    Appellant              :
                                            :
          v.                                :
                                            :
Commonwealth of Pennsylvania,               :
Department of Transportation,               :          No. 1608 C.D. 2018
Bureau of Driver Licensing                  :


# O R D E R

AND NOW, this 16th day of December, 2019, the Montgomery County Common Pleas Court's November 26, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge