Peter R. GIANNOPOULOS, Appellant

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 8, 2013.

Decided Dec. 27, 2013.

Thomas M. Regan, Allentown, for appellant.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellee.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Peter R. Giannopoulos (Licensee) appeals from the Montgomery County Common Pleas Court's May 28, 2013 order denying his appeal from the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (DOT) suspension of his operating privileges for refusing to submit to chemical testing under Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).[1] The sole issue for this Court's review is whether the trial court erred by finding that Licensee refused to submit to a chemical breath test. We affirm.

---

1. This statute is commonly known as the Implied Consent Law.

On March 16, 2012, Lower Merion Police Officer JoAnne Pepitone stopped Licensee because she observed his vehicle cross over the center lines on the roadway several times. Officer Pepitone observed that Licensee had bloodshot eyes, slurred speech and an odor of alcohol on his breath. Licensee admitted to Officer Pepitone that he had been drinking that evening. Licensee was asked to perform three roadside sobriety tests which he failed. Officer Pepitone arrested Licensee for driving under the influence of alcohol (DUI), and he was transported to Lower Merion Police Department's lock-up for further testing.

At the lock-up facility, Officer Pepitone advised Licensee of his rights pursuant to Section 1547 of the Vehicle Code. She also asked him if he had any medical conditions about which she should be made aware. Licensee answered, "no." Reproduced Record (R.R.) at 25a. Licensee acknowledged his rights and agreed to submit to a chemical breath test. Officer Robert Blattner administered Licensee's test. Because Licensee supplied insufficient breath samples, he was deemed to have refused chemical testing. On April 17, 2012, DOT issued Licensee official notice suspending his driving privileges for 18 months pursuant to "Section 1547B III" of the Vehicle Code as a result of his chemical test refusal.[2] R.R. at 7a. Licensee appealed to the trial court. The trial court held a *de novo* hearing on May 20, 2013

and, on May 28, 2013 denied Licensee's appeal.[3] Licensee appealed to this Court.[4]

 Licensee argues that the trial court erred as a matter of law by finding that Licensee refused his chemical test, and by failing to consider that Licensee: gave an unqualified, unequivocal assent to the test; made a good faith but unsuccessful attempt to provide a breath sample; did not deliberately undermine the process; and, made an immediate and timely request for a second test. We disagree.

To sustain a license suspension under Section 1547(b) of the Vehicle Code, DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Wright v. Dep't of Transp., Bureau of Driver Licensing*, 788 A.2d 443, 445 (Pa. Cmwlth.2001) (citation omitted). It is undisputed in this case that: (1) Officer Pepitone had reasonable grounds to arrest Licensee for DUI, (2) Licensee was asked to submit to a chemical test with the understanding that his refusal to do so would

---

**2.** Since Licensee had a prior DUI conviction, DOT was, presumably, proceeding under Section 1547(b)(1)(ii)(B)(III) of the Vehicle Code, which mandates an 18–month license suspension where, prior to the refusal to submit to chemical testing, a licensee was sentenced for a DUI.

**3.** The trial court issued its opinion on July 15, 2013.

**4.** "Our scope of review of a decision in a license suspension case is limited to determining whether the trial court's findings of facts are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision." *Orloff v. Dep't of Transp., Bureau of Driver Licensing*, 912 A.2d 918, 922 n. 7 (Pa.Cmwlth.2006).

result in a license suspension, and (3) Licensee submitted to the test. Thus, the sole question is whether Licensee's conduct during the test constituted a refusal to submit to chemical testing.

This Court has held that "[t]he question of whether a licensee has refused chemical testing is one of law, based upon the facts found by [the trial court]." *Tullo v. Dep't of Transp., Bureau of Driver Licensing,* 837 A.2d 605, 607 n. 2 (Pa.Cmwlth.2003).

> [I]t is not the province of this Court to make new or different findings of fact. Rather, we may only review the trial court's findings to determine if they are supported by substantial, competent evidence. As long as sufficient evidence exists that is adequate to support the facts found by the trial court as factfinder, we are precluded from overturning those findings. Additionally, we must view the evidence in a light most favorable to the party that prevailed before the trial court.

*Reinhart v. Dep't of Transp., Bureau of Driver Licensing,* 954 A.2d 761, 765 (Pa. Cmwlth.2008) (citations omitted).

■ The following documents were admitted into evidence at the hearing: certified copies of the April 17, 2012 suspension notice, Licensee's signed Implied Consent Form (DL–26), Licensee's prior driving suspension letters, Officer Blattner's certification, the breathalyzer calibration, the machine's accuracy reports, and Licensee's chemical test results. In addition, Officer Blattner testified that the DataMaster DMT breathalyzer machine he was using on March 16, 2012 was certified calibrated and accurate.

Officer Blattner stated that, after Officer Pepitone read the Implied Consent form to Licensee, he confirmed that Licensee was willing to take the test, and Licensee replied that he was. Officer Blattner explained to Licensee that when he is in-structed to do so, he should begin blowing into the mouthpiece with a steady, continuous exhale until he is instructed to stop. He also explained that the breath test would consist of two separate 2–minute sample periods separated by a rest, and that the lowest of the two readings would be used for prosecution. Officer Blattner then asked Licensee if he had any questions or any medical issues about which Officer Blattner should know, "[a]t which time [Licensee] did not have any, he replied no." R.R. at 55a.

Officer Blattner described that after Licensee was told to start blowing the first sample, Licensee sat in his chair and waited 45 seconds. After the 45 seconds, Licensee started blowing into the mouthpiece, but kept pausing and taking breaths; the machine reflected that he was not blowing hard enough or continuously enough for it to make a proper blood alcohol reading. Officer Blattner testified that it takes approximately 4 or 5 seconds of a sufficient, continuous breath to get a sample. He stated that Licensee took three inhales and exhales in the course of 18 to 20 seconds. Officer Blattner reported that Licensee rested again for approximately 40 seconds despite being told that "he had to blow harder and steady." R.R. at 66a. Officer Blattner explained that, approximately 97 seconds into the first 2–minute sample, Licensee again started to blow into the mouthpiece. "There was again a stuttering of the breath or an inconsistent—the force of his breath or the flow of his breath was up and down, it was not continuous, so it did not register...." R.R. at 67a. Officer Blattner continued: "At the very end it appeared that he was blowing harder, more forceful with a higher flow rate. But the last second or two before the test actually ended or aborted, his flow rate dropped back down.... He ... stopped blowing or slowed the force

down." R.R. at 68a. Officer Blattner explained that, because Licensee's first sample did not register, the machine timed out. Officer Blattner's descriptions of Licensee's attempts were illustrated by Licensee's test results which were recorded on a flow chart that printed at the end of Licensee's test.

Officer Blattner acknowledged that, after he notified Licensee that his test was deemed a refusal, "[h]e did ask if he could do it again...." R.R. at 73a. He also recounted that "[Licensee] mentioned that ... he was blowing as hard as he could, and, ... he mentioned that he had asthma as a child and that was pretty much the extent of the conversation." R.R. at 71a; *see also* R.R. at 93a. After Officer Blattner conferred with his supervisor, who declined to allow Licensee to take another test, Officer Blattner pressed the button on the machine designating that the test result was a refusal. Officer Blattner testified that he never manipulated or changed the mouthpiece during Licensee's test.

Licensee testified that Officer Blattner gave him instructions about the breath test, and he agreed to proceed. Licensee stated that Officer Blattner held a tube which had a plastic mouthpiece at one end of the tube and he was told to start blowing into the mouthpiece. He claimed that he immediately started blowing into the mouthpiece, and he continued blowing into it until he ran out of breath, approximately 10 or 15 seconds. Licensee explained that Officer Blattner took the tube back, stating that "it wasn't registering or something, something along those lines." R.R. at 111a. Officer Blattner fiddled with the mouthpiece, and Licensee could "hear the plastic wrapper." R.R. at 110a, 115a–116a. Officer Blattner again asked him to start blowing into the mouthpiece, which he did until he again ran out of breath. He testi-

fied that Officer Blattner again took the tube back and, although he could not see what the Officer was doing, Licensee thought he was again fiddling around with it. Licensee reported that Officer Blattner once more asked him to start blowing into the mouthpiece, which he did. Licensee said he felt like he was making progress that time because Officer Blattner was encouraging him by saying, "that's good, that's good, working better, keep trying, keep trying...." R.R. at 112a. However, after approximately 10 or 15 seconds, Officer Blattner told him that the breath machine timed out. He asked Officer Blattner for another test. After discussing it with another officer, Officer Blattner told Licensee that the test resulted in a refusal.

■ "Determinations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the factfinder. Conflicts in the evidence are for the trial court to resolve and are improper questions for appellate review." *Hasson v. Dep't of Transp., Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa.Cmwlth.2005) (citation omitted). Based upon the evidence, the trial court here found that Licensee was aware that failing to follow the test instructions would constitute a refusal, and that Licensee was told that the test requires a continuous breath of air. The trial court also found:

[Licensee], during the initial forty-five seconds of the test, did not provide any breath sample whatsoever. In fact, [Licensee] did not even so much as raise the mouthpiece to his mouth to attempt to provide a sample. During the balance of the test, [Licensee] ignored the officer's instructions. [Licensee] would intermittently exhale into the mouthpiece, providing only interrupted[,] insufficient air samples, despite the di-

rections from Officer Blattner that the breath sample must be continuous. Trial Ct. Op. at 4. The trial court found "Officer Blattner's testimony to be credible" and that "[Licensee's] testimony lacked credibility." Trial Ct. Op. at 4. The trial court also concluded that "[Licensee] failed to breathe enough air into the machine ... and offer[ed] no medical evidence to excuse his failure to properly take the test." Trial Ct. Op. at 5. Based upon our review of the record, there is substantial evidence to support the trial court's findings; therefore, we cannot disturb them.

Moreover, the law is clear that

[f]ailure to provide a sufficient breath sample constitutes a *per se* refusal. A refusal may be established where the breathalyzer administrator credibly testifies the licensee did not provide sufficient breath. Alternatively, [DOT] may establish a refusal by presenting a printout from a properly[-]calibrated breathalyzer indicating a 'deficient sample.' [DOT] bears the burden of establishing a licensee failed to supply sufficient breath into the breathalyzer.

*Reinhart*, 954 A.2d at 766 (citations omitted). Here, DOT established Licensee's refusal with Officer Blattner's credible testimony and printout from a properly-calibrated breathalyzer, thereby evidencing Licensee's deficient sample. Accordingly, DOT met its burden.

Licensee, on the other hand, failed to meet his burden.

[A] failure to supply a sufficient breath sample shifts the burden to the licensee to prove by competent medical evidence that he was physically unable to take the test. [Where n]o medical evidence was presented ... any medical condition that may have affected Licensee's performance during the breathalyzer test cannot be considered.

*Riley v. Dep't of Transp., Bureau of Driver Licensing*, 946 A.2d 1115, 1123 n. 6 (Pa.Cmwlth.2008) (citation omitted). Having done nothing more "than mention[ ] that he had asthma as a child," in light of the fact that he twice previously advised Officer Blattner that he had no medical conditions, Licensee failed to establish that he was physically incapable of providing a sufficient breath sample. R.R. at 71a.

Licensee relies on this Court's holding in *Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946 (Pa.Cmwlth.2011), to support his claim that he should have been permitted to take a second breath test. In *Bomba*, based on the finding that "Licensee made one attempt to provide a breath sample [and, w]hen it was not successful, she immediately asked to try again," *id.* at 950, this Court concluded:

It is well established that anything other than an unqualified, unequivocal assent to a chemical test constitutes a refusal. What is less clear is how many chances a licensee must be given to consent or refuse. Refusal cases are highly fact-sensitive. **The crucial, determinative factor we glean from the cases is whether [DOT's] evidence shows that the licensee deliberately tried to delay or undermine the testing process.** Such evidence was simply not present in this case. Rather, the evidence showed, and the trial court found, that Licensee made a good faith, but unsuccessful, attempt to provide a breath sample and immediately requested to attempt the test a second time. This conduct does not constitute a refusal.

*Id.* at 951 (emphasis added). The Court expressly distinguished cases, like the one before us, in which

[t]he licensees ... attempted multiple times to provide an adequate breath

sample but failed to do so. In *Sweeney* [*v. Department of Transportation, Bureau of Driver Licensing*, 804 A.2d 685 (Pa.Cmwlth.2002)], the licensee 'attempted many times to blow into the mouthpiece, but her breaths were not hard enough or long enough.' *Sweeney*, 804 A.2d at 686. In [*Department of Transportation, Bureau of Driver Licensing v.*] *Kilrain*, [593 A.2d 932 (Pa. Cmwlth.1991),] the licensee 'made five attempts to complete a *second* breathalyzer test and failed.' *Kilrain*, 593 A.2d at 933 (emphasis added). Finally, the licensee in *Spera* [*v. Department of Transportation, Bureau of Driver Licensing*, 817 A.2d 1236 (Pa.Cmwlth. 2003)], made 'five to eight attempts' before the officer deemed his conduct a refusal for failure to provide sufficient breath samples. *Spera*, 817 A.2d at 1239.

*Bomba*, 28 A.3d at 950. Licensee, like the licensees in *Sweeney*, *Kilrain*, and *Spera*, supplied many breaths that were not hard or long enough to register as a single sample and were, therefore, deemed refusals.

█ Licensee further argues that he was entitled to take a second test, citing *Bomba*, since he was well within the two-hour window specified in Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802, for obtaining a sample. He suggests that this Court established a *per se* rule in *Bomba* giving licensees up to two hours to perform chemical testing. However, this Court never adopted such a rule, and we refuse to do so now. Rather, we continue to hold that failure to provide a sufficient breath constitutes a *per se* refusal, *Reinhart*, and we reiterate this Court's long-standing position that "[p]olice officers are not required to spend time either cajoling an arrestee or waiting for [a licensee] to change his mind." *Dep't of Transp., Bu-*reau of Traffic Safety v. Ferrara, 89 Pa. Cmwlth. 549, 493 A.2d 154, 156–57 (1985). Unlike the licensee in *Bomba*, the trial court here found Officer Blattner's testimony credible that Licensee made no attempt to breathe into the machine for the first 45 seconds of the test and again later during the same test did nothing for 40 seconds. Trial Ct. Op. at 4–5. Accordingly, Licensee made no attempt to supply any breath at all for approximately 85 seconds during a 120–second test. Because the evidence substantiates the trial court's conclusion that Licensee's conduct constituted a refusal, the trial court did not err by finding that Licensee refused to submit to a chemical breath test. Thus, the trial court's order is affirmed.

### ORDER

AND NOW, this 27th day of December, 2013, the Montgomery County Common Pleas Court's May 28, 2013 order is affirmed.