IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jessica Rae Redmond | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | No. 610 C.D. 2023 |
| Appellant | : | Submitted: September 9, 2024 |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED: October 17, 2024


The Commonwealth of Pennsylvania, Department of Transportation (DOT), Bureau of Driver Licensing (Bureau) appeals from the May 17, 2023 order of the Court of Common Pleas of Fayette County (Trial Court), which sustained the statutory appeal of Jessica Rae Redmond (Licensee) from a 12-month suspension of her operating privilege by DOT pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i),[1] commonly referred to as the Implied Consent

---

[1] Section 1547(b)(1)(i) provides as follows:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

. . .

**(b) Civil penalties for refusal.—**

Law, as a result of Licensee's refusal to submit to chemical testing upon her arrest for driving under the influence of alcohol or a controlled substance (DUI).[2] Upon review, we reverse the Trial Court's order and reinstate the Bureau's 12-month suspension of Licensee's operating privilege.

The Bureau notified Licensee by letter mailed May 18, 2022, that her operating privilege would be suspended for one year for refusing to submit to a chemical test on April 9, 2022. *See* Suspension Letter dated May 18, 2022, Reproduced Record (R.R.) at 11a-14a. Licensee appealed the Bureau's decision to the Trial Court (Statutory Appeal), which held a *de novo* hearing on the matter on May 17, 2023. *See* Statutory Appeal, R.R. at 7a-16a; Notes of Testimony, May 17, 2023 License Appeal Proceedings (N.T.), R.R. at 42a-89a. The following testimony was presented at the hearing.

Pennsylvania State Police Trooper Michael Oplinger testified on behalf of the Bureau. *See* N.T. at 34-47, R.R. at 75a-88a. Trooper Oplinger explained that, while working the 10:00 p.m. to 6:00 a.m. shift on April 8-9, 2022, he was traveling with his partner on Route 21 in Germantown Township, Fayette County, when he observed a vehicle coming in the opposite direction with its high beams illuminated. *See* N.T. at 34, R.R. at 75a. Trooper Oplinger turned his vehicle around and began

---

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment [of Transportation] shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. § 1547(b)(1)(i).

[2] 75 Pa.C.S. § 3802.

to follow the vehicle, which he then observed crossing the white fog line on the right side of the road. *See* N.T. at 34-35, R.R. at 75a-76a. As a result of these observations, Trooper Oplinger activated his vehicle's emergency lights and conducted a traffic stop. *See* N.T. at 35, R.R. at 76a.

Trooper Oplinger approached the vehicle on the driver's side where he observed Licensee in the driver's seat. *See* N.T. at 35, R.R. at 76a. Licensee put her window down and Trooper Oplinger advised Licensee that he had stopped her because of the high beams and because she crossed the fog line. *See* N.T. at 35-36, R.R. at 76a-77a. Licensee related that she had her high beams on to see because her low beams are very dim. *See* N.T. at 36, R.R. at 77a. During this conversation, Trooper Oplinger could smell the odor of an alcoholic beverage emanating from the vehicle. *See* N.T. at 36, R.R. at 77a. Licensee explained that she had been at a local bar with some friends where she had consumed three White Claws. *See* N.T. at 36, R.R. at 77a.

As a result of his observations, Trooper Oplinger asked her to alight from the vehicle. *See* N.T. at 36, R.R. at 77a. She did, stumbling to the right as she exited the vehicle. *See* N.T. at 36, R.R. at 77a. Once she was out of the vehicle, Trooper Oplinger asked Licensee if she would submit to a preliminary breath test and she said that she would not if she did not have to. *See* N.T. at 37, R.R. at 78a. Trooper Oplinger then asked Licensee to submit to field sobriety tests. *See* N.T. at 37, R.R. at 78a. Licensee complied with the request but failed the field sobriety tests.[3] *See* N.T. at 37-38, R.R. at 78a-79a.

_____

[3] Although Trooper Oplinger testified that he administered three field sobriety tests – the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged stand test – he only testified as to the details and results of two tests. *See* N.T. at 37, R.R. at 78a. After explaining that Licensee had told him that she had no issues with seeing or anything that affects her vision,

3

Trooper Oplinger then placed Licensee under arrest. *See* N.T. at 38, R.R. at 79a. When asked, Licensee indicated she would submit to a certified breath test at the State Police barracks. *See* N.T. at 38, R.R. at 79a. Trooper Oplinger placed Licensee in the police vehicle and transported her to the State Police barracks. *See* N.T. at 38-39, R.R. at 79a-80a. Once at the barracks, Trooper Oplinger read Licensee the Bureau's DL-26A implied consent form (DL-26A Form)[4] in its

---

Licensee failed the horizontal gaze nystagmus test, demonstrating a lack of smooth pursuit, nystagmus prior to 45 degrees, and nystagmus sustained at maximum deviation. *See* N.T. at 37-38, R.R. at 78a-79a. Trooper Oplinger explained that Licensee also failed the walk-and-turn test by taking 10 steps instead of 9, stepping off the line, and not walking heel to toe as instructed. *See* N.T. at 38, R.R. at 79a.

[4] The DL-26A Form, entitled "Chemical Test Warnings and Report of Refusal to Submit to a Breath Test as Authorized by Section 1547 of the Vehicle Code in Violation of Section 3802," contains the following warnings:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of breath. You must successfully complete two consecutive breath samples in order to complete a chemical test of breath.
>
> 3. If you refuse to submit to the breath test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored. In addition, if you refuse to submit to the breath test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving

4

entirety. *See* N.T. at 39, R.R. at 80a; *see also* DL-26A Form, R.R. at 35a. Licensee indicated that she would be capable of providing the required two breath samples to complete the testing. *See* N.T. at 39 & 45, R.R. at 80a & 86a.

Trooper Oplinger then administered the breath test to Licensee using a certified, calibrated breathalyzer machine, which Trooper Oplinger is certified to use. *See* N.T. at 39-40 & 46, R.R. at 80a-81a & 87a. Licensee's first attempt to blow into the machine yielded an insufficient sample. *See* N.T. at 40 & 45, R.R. at 81a & 86a. Trooper Oplinger gave Licensee a short break before administering the test to Licensee a second time, which again resulted in an insufficient sample. *See* N.T. at 40, R.R. at 81a. After the second insufficient sample, Trooper Oplinger ended the breath testing. *See* N.T. at 41, 44 & 45, R.R. at 82a, 85a & 86a.

After the testing, Licensee told Trooper Oplinger that she had been unable to complete the testing properly due to asthma. *See* N.T. at 40 & 44, R.R. at 81a & 85a. However, Trooper Oplinger testified that he observed that Licensee was able to blow into the hose of the machine without any problems. *See* N.T. at 44, R.R. at 85a. Additionally, Trooper Oplinger, who is a certified paramedic, explained that, during the testing, Licensee showed no shortness of breath, no signs of an

---

with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of seven years in jail and a maximum fine of up to $15,000.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a breath test, you will have refused the test.

DL-26A Form, R.R. at 35a. Licensee signed the DL-26A Form indicating she had received the above warnings. *See* N.T. at 39, R.R. at 80a; *see also* DL-26A Form, R.R. at 35a.

asthma attack, and no other signs of respiratory distress of any kind. *See* N.T. at 40-41, R.R. at 81a-82a. Trooper Oplinger did not witness Licensee wheezing, coughing, or suffering from shortness of breath. *See* N.T. at 43-44, R.R. at 84a-85a. Further, Licensee did not ask to use an inhaler of any kind and none was found on her person. *See* N.T. at 40, R.R. at 81a.

Physician Assistant Michael David Rua[5] testified on behalf of Licensee. *See* N.T. at 4-32, R.R. at 45a-73a. Mr. Rua testified that Licensee tested positive for COVID-19 on September 20, 2021. *See* N.T. at 12, R.R. at 53a. Mr. Rua's office treated Licensee with Trelegy, a triple-therapy inhaler,[6] to aid and improve her breathing during her recovery from COVID. *See* N.T. at 7, R.R. at 48a.

Mr. Rua testified that Licensee presented to his office on May 26, 2022, with a chief complaint of wheezing and asked to have a breathing test performed. *See* N.T. at 12, R.R. at 53a. This May 26, 2022 visit was the first time Mr. Rua's office assessed Licensee for respiratory issues.[7] *See* N.T. at 30, R.R. at 71a. During that visit, Licensee underwent a pulmonary function test (spirometer) to assess her lung capacity. *See* N.T. at 6, 8 & 22, R.R. at 47a, 49a & 62a. Mr. Rua explained

---

[5] Mr. Rua works at Montgomery Medical and has 23 years of experience as a Physician Assistant. *See* N.T. at 4, R.R. at 45a. The Trial Court recognized Mr. Rua as an expert in the field of "medical/physician assistant." *See* N.T. at 5, R.R. at 46a.

[6] On direct examination, Mr. Rua testified that his office also prescribed albuterol, a rapid-acting bronchodilator, in addition to Trelegy. *See* N.T. at 7, R.R. at 48a. However, on cross-examination, upon reviewing Licensee's records, Mr. Rua testified that Licensee was not prescribed albuterol by his office. *See* N.T. at 7 & 25, R.R. at 48a & 66a.

[7] Mr. Rua explained that Licensee presented to his office for two previous visits – on December 19, 2021, and February 16, 2022 – following her September 2021 COVID diagnosis and before this May 26, 2022 visit. *See* N.T. at 25, R.R. at 66a. Neither visit was for respiratory issues. *See* N.T. at 30, R.R. at 71a.

that this test assesses lung capacity, not an individual's ability to blow into a machine. *See* N.T. at 8, R.R. at 49a. The pulmonary function test indicated that Licensee's forced vital capacity was 30% of predicted capacity. *See* N.T. at 27, R.R. at 68a.

When asked how he reached his opinion about Licensee's ability to take a breath test, Mr. Rua first testified somewhat generally that coughing and having a hard time breathing and catching one's breath

> is quite common in post-COVID states; people just don't always recover very quickly. So[,] its oftentimes hard for patients after COVID initially to take a deep breath in and expel all of the air out completely; henceforth, it would make it harder to do a breathalyzer because you have to get a full breath in and blow it out virtually all at one time. Some patients can't even get a full breath in before they have to let out and cough and take a second breath.

*See* N.T. at 9, R.R. at 50a. Specifically, as to whether Licensee herself would have been able to activate a breath testing device on April 9, 2022, Mr. Rua explained that, based on his treatment of Licensee, the medicines prescribed, and the condition she was in when he saw her on May 26, 2022, she could have attempted a breath test. *See* N.T. at 10, R.R. at 51a. He testified:

> She could attempt it. It would be much more difficult to complete the activation process, I could definitely say that. She was in a lot of respiratory distress from the COVID, which would impair her ability to adequately take a deep breath in, blow it out, and activate the breathalyzer.

*See* N.T. at 10, R.R. at 51a.

Based on this testimony, the Trial Court sustained the Statutory Appeal by order dated May 17, 2023 (Appeal Order). *See* Appeal Order, R.R. at 90a.[8] The Bureau timely appealed the Appeal Order to this Court. *See* Notice of Appeal, R.R. at 91a-107a.

On appeal,[9] the Bureau argues that the Trial Court erred as a matter of law by finding that Licensee did not refuse Trooper Oplinger's request that she submit to chemical testing. *See* Bureau's Br. at 4, 22-26. The Bureau further argues that the Trial Court erred by determining that Licensee satisfied her burden of proving that she was physically incapable of completing chemical testing due to a medical condition. *See* Bureau's Br. at 4, 27-32. We agree.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee

[8] The Appeal Order provided no reasoning for the Trial Court's determination and consisted solely of a single line of text that read: "AND NOW, this 17th day of May, 2023, after hearing, it is hereby ORDERED and DECREED that the [Statutory A]ppeal is SUSTAINED and the action of the [Bureau] is VACATED." Appeal Order, R.R. at 90a. After the Bureau complied with the Trial Court's order to file a Statement of Errors Complained of on Appeal, the Trial Court filed a Statement in Lieu of Opinion that explained its decision to sustain the Statutory Appeal. *See* Statement in Lieu of Opinion, R.R. at 117a-18a.

[9] "Our standard of review is limited to determining whether common pleas committed an error of law, whether common pleas abused its discretion, or whether the findings of fact are supported by substantial evidence." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018).

8

to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing*, 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). "Where a licensee suffers from a medical condition that affects his or her ability to perform a test and that condition is not obvious, a finding that a licensee was unable to take the test for medical reasons must be supported by competent medical evidence." *Wright*, 788 A.2d at 445. "In cases requiring medical testimony, competent evidence means that medical testimony which expresses unequivocality." *Evans v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp.)*, 487 A.2d 477, 479-80 (Pa. Cmwlth. 1985).

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). "The law is clear that failure to provide a sufficient breath sample constitutes a *per se* refusal." *Giannopoulos*, 82 A.3d at 1097 (quoting *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 766 (Pa. Cmwlth. 2008)) (internal brackets omitted). Moreover, "[a] refusal may be established where the breathalyzer administrator credibly testifies the licensee did not provide sufficient breath." *Id.*

No dispute exists in the instant matter as to three of the four elements that the Bureau must meet to sustain Licensee's driver's license suspension: Licensee was arrested for drunken driving based on reasonable grounds to believe that she was driving under the influence, Trooper Oplinger clearly requested that Licensee submit to chemical testing, and, by reading the DL-26A form, Trooper Oplinger warned Licensee that her refusal to submit to chemical testing would result

9

in a license suspension. The Bureau challenges only the Trial Court's determination that the Bureau failed to meet its burden to sustain the license suspension because Trooper Oplinger was unsure whether Licensee made an "honest attempt" to comply with the breath testing.

The Trial Court explained its decision to sustain the Statutory Appeal thusly:

> This Court found the testimony of the only witness presented by the [Bureau] to be credible. We asked: "You can't tell us for sure, in your opinion, one way or another whether [Licensee] was trying to manipulate it and beat the breath (test) or if she was really making an honest attempt; isn't that a fair assessment?" The witness answered: "Yes, Your Honor." (Hearing Transcript Pages 47, 48)[.]

> Since the only witness presented by the [Bureau] is unsure if [L]icensee was making an honest attempt then the [Trial] Court cannot find that the [Bureau] has met its burden.

> We would have dismissed this matter had this witness been the first witness called. However, the parties agreed to take [L]icensee's witness out of order. We also find this witness to be credible when he testified that [L]icensee was physically incapable of completing the breath test due to her medical condition. (Hearing Transcript Page 10).

> Accordingly, we sustained the [Statutory A]ppeal, vacated the action of the [Bureau] and respectively request that said decision be affirmed for the reasons stated herein.

Statement in Lieu of Opinion at 1-2, R.R. at 117a-18a. Thus, the Trial Court accepted that Licensee provided two insufficient samples but concluded that this

evidence of the insufficient samples did not satisfy the Bureau's burden to illustrate Licensee's refusal because it did not foreclose the possibility that Licensee may have been honestly trying to comply. We cannot agree that the evidence in this matter warranted such a conclusion by the Trial Court.

Here, Trooper Oplinger – whose testimony the Trial Court found credible – testified that he conducted two breath tests with a certified and calibrated machine and that Licensee provided an insufficient sample on each test. This evidence established a refusal for purposes of the Implied Consent Law. *Giannopoulos*. The Trial Court's suggestion that Licensee's effort is in any way determinative is legally incorrect. "[T]he law is now well established that failure to complete a breathalyzer test, whether or not a good faith effort was made to do so, constitutes a refusal per se to take the test." *Sweeney v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 685, 687 (Pa. Cmwlth. 2002) (emphasis omitted). As this Court has explained:

> The bedrock principal . . . is that failure to complete a breathalyzer test constitutes a refusal. **A trial court's finding that a licensee made a good faith attempt to complete the breathalyzer test is irrelevant to the question of whether the licensee refused the test.** Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal.

*Id.* at 687 n.11 (quoting *Dep't of Transp., Bureau of Driver Licensing v. Kilrain*, 593 A.2d 932, 935 (Pa. Cmwlth. 1991)) (emphasis provided). Because a licensee's good intentions in completing chemical testing are irrelevant to a refusal determination, the Trial Court erred by determining the Bureau failed to meet its burden to show

11

Licensee refused by failing to proffer evidence regarding her motivation in supplying insufficient samples. *Giannopoulos*; *Sweeney*.

We further find that the Trial Court erred by determining that Mr. Rua's testimony satisfied Licensee's burden to forward competent medical evidence that she was physically unable to complete the requested breath testing. Although he testified generally that persons recovering from COVID may have problems taking and expelling full breaths, Mr. Rua's testimony regarding Licensee in particular was that she could have attempted the testing on April 9, 2022. *See* N.T. at 10, R.R. at 51a. Mr. Rua qualified his assessment by explaining that Licensee may have had respiratory distress from her previous bout of COVID and her continuing recovery therefrom that could have impaired her ability to activate the breathalyzer, but this qualification did not preclude for medical reasons Licensee's ability to successfully produce and provide sufficient breath for testing purposes. Importantly, Mr. Rua never testified that COVID was a problem on the night of Licensee's arrest. Mr. Rua's opinion speculates on Licensee's physical condition and capabilities on the night of April 9, 2022, by comparing those capabilities to generalities about COVID patients and his assessment of her condition over a month and a half later on May 26, 2022. This equivocal testimony lacks the certainty necessary to sustain Licensee's burden of proving that, on April 9, 2022, she was physically incapable of performing the requested breath testing by virtue of previously having had COVID in September 2021. Accordingly, the Trial Court erred by determining that Licensee proffered competent medical evidence sufficient to support a conclusion that she was physically incapable of performing the requested testing.

Moreover, we acknowledge that on the night of her arrest, Licensee told Trooper Oplinger that her failure to activate the breath testing machine was

12

occasioned by asthma. *See* N.T. at 40, R.R. at 81a; *Conrad v. Dep't of Transp., Bureau of Driver Licensing*, 226 A.3d 1045, 1054 (Pa. Cmwlth. 2020) ("It is well settled that a licensee has a duty to inform the police officer of any known medical condition that is not obvious and may affect the licensee's ability to perform the requested chemical test."). We note, however, that, in addition to a licensee's duty to inform a police officer of a medical condition that prevents her from completing testing at the time of testing, the licensee must also produce competent medical evidence of the purported condition to support a finding that the licensee was unable to take the test for that medical reason. *Id.* A simple declaration by a licensee that she is physically unable to perform a breath test, absent medical proof of her incapacity, will not justify her refusal. *Dep't of Transp., Bureau of Traffic Safety v. Kelly*, 335 A.2d 882, 885 (Pa. Cmwlth. 1975). Licensee presented no evidence regarding asthma before the Trial Court. In fact, the Trial Court expressly noted that Licensee's purported asthma was not documented in Licensee's medical records and thus was not otherwise established. *See* N.T. at 23, R.R. at 64a.

For the above reasons, we reverse the Appeal Order and reinstate the Bureau's 12-month suspension of Licensee's operating privilege.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jessica Rae Redmond | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | No. 610 C.D. 2023 |
| Appellant | : | |

# **O R D E R**

AND NOW, this 17th day of October, 2024, the May 17, 2023 order of the Court of Common Pleas of Fayette County is REVERSED, and the 12-month suspension of Jessica Rae Redmond's operating privilege is REINSTATED.

_____
CHRISTINE FIZZANO CANNON, Judge