IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quinnie McKenzie Walker, III      :
                                :
              v.                  :
                                :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing,        :   No. 1381 C.D. 2023
                    Appellant    :   Submitted: March 4, 2025

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: April 4, 2025

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), appeals from the October 19, 2023 order (Trial Court Order) of the Court of Common Pleas of Allegheny County (Trial Court) that sustained the appeal of Quinnie McKenzie Walker, III (Licensee) from an 18-month driver's license suspension imposed by the DOT pursuant to what is commonly known as the Vehicle Code's Implied Consent Law, 75 Pa.C.S. § 1547(b) (Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance (DUI).[1] Upon review, we reverse.

The Port Authority of Allegheny County Transit Police (Port Authority Police) arrested Licensee for suspicion of DUI on the night of December 22, 2022.

---

[1] 75 Pa.C.S. § 3802.

*See* Trial Court Opinion dated February 15, 2024 (Trial Court Opinion) at 1-2, Reproduced Record (R.R.) at 87a-88a; *see also* Notes of Testimony, October 19, 2023 (N.T.) at 4, R.R. at 14a. Thereafter, on December 27, 2022, the DOT notified Licensee that, as a result of his refusal to submit to chemical testing, his driving privilege would be suspended for a period of 18 months.[2] *See* License Suspension Notification processed December 27, 2022, R.R. at 5a-8a. Licensee appealed the suspension. *See* Petition for Appeal from Order of Secretary of Transportation Suspending Operator's License, R.R. at 2a-10a. The Trial Court conducted a hearing on October 19, 2023, and sustained Licensee's appeal by order on the same day. *See* Trial Court Order, R.R. at 73a. The DOT timely appealed to this Court.[3] *See* Notice of Appeal, R.R. at 74a-79a.

The DOT raises one claim on appeal: that the Trial Court erred as a matter of law by determining that the police did not have reasonable grounds to believe that Licensee was driving, operating, or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, so as to allow the police to request that Licensee submit to chemical testing. *See* DOT's Brief at 4 & 13-26. The DOT argues that the totality of the circumstances, including police observations of Licensee's slurred speech and the strong odor of alcohol emanating from Licensee's person and breath, together with police observations that the accident in which Licensee was involved was avoidable, sufficed to provide police

---

[2] The DOT suspended Licensee for 18 months, as opposed to 12 months, because Licensee had a prior DUI conviction. *See* 75 Pa.C.S. § 1547(b)(1)(ii)(B)(II); *see also* Reproduced Record (R.R.) at 65a.

[3] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

2

with reasonable grounds to believe that Licensee had operated his vehicle while under the influence of alcohol. *See id.* at 13-26. We agree.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], [the] DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once [the] DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). Here, the DOT challenges only the Trial Court's determination that the police did not have reasonable grounds to believe that Licensee was under the influence of alcohol while driving his vehicle.

"Whether reasonable grounds exist is a question of law reviewable by the court on a case by case basis." *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999). As the Court has explained,

> [a]n officer has reasonable grounds to believe an individual was operating a motor vehicle under the influence of alcohol if a reasonable person in the position of the police officer, viewing the facts and circumstances as they appeared to the officer at the time, **could conclude** that the driver drove his car while under the influence of alcohol. The test for determining if reasonable grounds exist is not very demanding. An officer may acquire

3

> reasonable grounds to believe that a licensee was driving under the influence of alcohol *at any time* during the course of interaction between the officer and the licensee.

*Kachurak v. Dep't of Transp., Bureau of Driver Licensing*, 913 A.2d 982, 985 (Pa. Cmwlth. 2006) (internal citations and quotation marks omitted) (bold emphasis added) (italic emphasis in original); *see also Banner*, 737 A.2d at 1207 ("Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, **could have concluded** that the motorist was operating the vehicle while under the influence of intoxicating liquor.") (emphasis provided); *Yencha v. Dep't of Transportation, Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018). Further,

> [t]he standard of reasonable grounds to support a license suspension does not rise to the level of probable cause required for a criminal prosecution. A driver's guilt or innocence of a criminal offense is not at issue in the license suspension proceedings. It is axiomatic that the legality of a driver's underlying DUI arrest is irrelevant for purposes of a license suspension proceeding for refusal to submit to chemical testing.

*Kachurak*, 913 A.2d at 985-86 (internal citations omitted); *see also Yencha*, 187 A.3d at 1044 ("The test for whether a police officer has reasonable grounds to believe that a licensee drove while intoxicated is not demanding; it requires even less proof than what is necessary to establish probable cause for a criminal prosecution."). Moreover,

> [a]n arresting officer need not prove that he was correct in his belief that the licensee was operating the vehicle while under the influence. Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void. . . . Additionally, an officer's

4

reasonable belief that the licensee was driving while under the influence will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances as they appeared at the time supports the officer's belief. Further, courts appropriately defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances.

*Yencha*, 187 A.3d at 1044-45 (internal quotation marks and citations omitted). In addition,

[t]he only valid inquiry on this issue at the *de novo* hearing is whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer **could have concluded** that the motorist was operating the vehicle and under the influence of intoxicating liquor.

*Dep't of Transp., Bureau of Traffic Safety v. Dreisbach*, 363 A.2d 870, 872 (Pa. Cmwlth. 1976) (footnote omitted) (emphasis added); *see also Demarchis v. Dep't of Transp., Bureau of Driver Licensing*, 999 A.2d 639, 642 (Pa. Cmwlth. 2010) ("An officer's belief that a licensee was operating a vehicle while under the influence of alcohol or a controlled substance must only be objective in light of the surrounding circumstances."); *Sisinni v. Dep't of Transp., Bureau of Driver Licensing*, 31 A.3d 1254, 1259 (Pa. Cmwlth. 2011) ("[The officer's] indefiniteness does not negate reasonable grounds, but rather supports his belief that, based on his observations, [the licensee] *could* have been operating his vehicle under the influence. Nothing in the statute requires an officer to be absolutely certain of intoxication prior to requesting a chemical test." (emphasis in original)).

5

Here, Officer Paul Downs testified on behalf of the DOT.[4] *See* N.T. at 3-24, R.R. at 13a-34a. Officer Downs testified that he came into contact with Licensee a little after 10:00 p.m. on the evening of December 22, 2022, when he was dispatched to the scene of a collision between an automobile and a bus. *See* N.T. at 3-4, R.R. at 13a-14a. Once on the scene, Officer Downs met with a detective and the driver of the bus, each of whom described the accident, which to them appeared to have been avoidable had Licensee safely operated his vehicle. *See* N.T. at 6-8, R.R. at 16a-18a.

Officer Downs then contacted Licensee, who vaguely described the accident and was unsure exactly how the accident occurred. *See* N.T. at 8, R.R. at 18a. Officer Downs observed what he described as three intoxicated persons inside Licensee's vehicle, one of whom was vomiting in the front passenger seat. *See* N.T. at 8 & 15, R.R. at 18a & 25a. Additionally, Officer Downs testified that, when he encountered and observed Licensee, Licensee was slurring his speech. *See* N.T. at 8, R.R. at 18a. Officer Downs further explained that he smelled an odor of alcohol emanating from Licensee's person and breath and explained that the detective with whom he met upon arriving at the scene had also detected slurred speech and an odor of alcohol emanating from Licensee. *See* N.T. at 8-9, R.R. at 18a-19a. Officer Downs did not observe, however, Licensee exhibiting unsteady gait, nystagmus, or bloodshot or glassy eyes. *See* N.T. at 18, R.R. at 28a.

Licensee spoke with Officer Downs, answered his questions, and produced his license and registration for inspection. *See* N.T. at 18, R.R. at 28a. When asked by Officer Downs, Licensee denied that he had consumed any alcoholic

---

[4] Officer Downs has been an officer with the Port Authority Police for 2½ years and had participated in approximately 21 DUI arrests. *See* N.T. at 3 & 14, R.R. at 13a & 24a.

6

beverages before driving. *See* N.T. at 9, R.R. at 19a. Officer Downs advised Licensee of his observations and requested that Licensee perform some standard field sobriety tests. *See* N.T. at 9, R.R. at 19a. Licensee refused. *See* N.T. at 9, R.R. at 19a. Officer Downs then placed Licensee under arrest for suspicion of DUI, handcuffing Licensee and placing him in the back seat of Officer Downs' patrol vehicle. *See* N.T. at 9-10, R.R. at 19a-20a.

Once Licensee was under arrest and placed in the patrol vehicle, Officer Downs read Licensee the Implied Consent Warnings from the DOT DL-26B Form[5]

---

[5] The DL-26B Form, entitled "Chemical Test Warnings and Report of Refusal to Submit to a Blood Test as Authorized by Section 1547 of the Vehicle Code in Violation of Section 3802," contains the following warnings:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B Form, R.R. at 58a. Officer Downs signed the DL-26B Form indicating that he had read the above warnings to Licensee and that Licensee had refused to sign the form. *See* DL-26B Form, R.R. at 58a.

in their entirety through the partially opened window of the closed patrol car, after which Licensee verbally refused to submit to testing. *See* N.T. at 10-12 & 21, R.R. at 20a-22a, 31a & 58a. Officer Downs explained that he read the DL-26B Form to Licensee only once. *See* N.T. at 20, 21 & 22, R.R. at 30a, 31a & 32a. Officer Downs further testified that at no point did Licensee indicate that he did not hear or understand the Implied Consent Warnings or ask for the warnings to be re-read or explained. *See* N.T. at 13 & 23, R.R. at 23a & 33a.

Licensee also testified before the Trial Court. *See* N.T. at 24-34, R.R. at 34a-44a. Licensee denied drinking alcohol on the night in question. *See* N.T. at 28 & 32, R.R. at 38a & 42a. He testified that he and those in his car were coming from a business meeting and that he was the designated driver. *See* N.T. at 28, R.R. at 38a. Licensee conceded that the woman in the front seat was intoxicated and stated that she had been sick from alcohol consumption, which caused the front seat of the vehicle to smell of alcohol.[6] *See* N.T. at 28, R.R. at 38a. Licensee testified that he provided the police with his license and insurance when requested but that there was no indication from the police that he was going to be arrested for suspicion of DUI prior to being handcuffed and placed in the patrol vehicle.[7] *See* N.T. at 29, R.R. at 39a. Licensee conceded that he refused to participate in field sobriety testing. *See* N.T. at 28 & 32, R.R. at 38a & 42a. He testified that the police officer had told him that he was requesting that Licensee submit to the field sobriety testing to ensure

---

[6] Licensee testified that he did not know whether the other two individuals were intoxicated. *See* N.T. at 28, R.R. at 38a.

[7] Licensee did testify that the police explained the reason for his arrest upon placing him in handcuffs. *See* N.T. at 33, R.R. at 43a.

8

that Licensee was capable of safely driving and that he had refused the request because his vehicle was no longer drivable.[8]  *See* N.T. at 29-30, R.R. at 39a-40a.

Based on this evidence supplied by Officer Downs and Licensee, the Trial Court concluded that the DOT did not establish that Officer Downs had reasonable grounds to believe that Licensee had been operating a motor vehicle while under the influence of alcohol.  *See* Trial Court Opinion at 4.  The Trial Court explained as follows:

> Here, although this [c]ourt found the officer's testimony to be credible, there was [sic] insufficient signs of intoxication for a reasonable person in the position of the police officer to have concluded that [Licensee] was operating the vehicle while under the influence of alcohol. The accident was not caused by [Licensee].  The odor of alcohol could have been caused by the passengers, especially the front seat passenger who was throwing up from alcohol consumption.  [Licensee] was cooperative, not belligerent, and had spoken with officers and walked around the scene for more than 20 minutes and produced the requested license, registration and insurance information.  During this time, [Licensee's] gait was normal and steady.  [Licensee] did not have glassy or bloodshot eyes.  Although Officer Downs testified that [Licensee] had slurred speech, this could have been from the trauma of the accident and was insignificant enough that [Officer Downs] did not have a problem understanding [Licensee's] speech.

Trial Court Opinion at 4.

---

[8] On cross-examination, Licensee explained his refusal as follows:  "I was just in a car crash and I was worked up.  I was interacting with the officers the whole time. [The police officer] shows up and is asking me all these questions.  I just wasn't comfortable."  N.T. at 32-33, R.R. at 42a-43a.

9

We cannot agree with the Trial Court's assessment of the evidence. As this Court has observed,

> [w]hile there is no set list of behaviors that a person must exhibit for an officer to have reasonable grounds for making an arrest, case law has provided numerous examples of what this Court has accepted as reasonable grounds in the past, e.g., staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, and the odor of alcohol.

*Stancavage v. Dep't of Transp., Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009). However,

> the absence of one or more of the above-listed *Stancavage* factors does not mean the officer lacks reasonable grounds to believe a licensee has driven while intoxicated. Further, it is immaterial whether alternative reasonable explanations for how the motorist came to be as he or she was found to exist.

*Gaskin v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1178 C.D. 2018, filed Jan. 3, 2023),[9] slip op. at 10 (quoting first *Farnack v. Dep't of Transp., Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011), then *Gammer v. Dep't of Transp., Bureau of Driver Licensing*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010)) (internal quotation marks, citations, and brackets omitted). Additionally, where a motor vehicle accident has occurred, this Court has found the odor of alcohol together with slurred speech to be adequate to support reasonable grounds to request

---

[9] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

10

chemical testing. *See Herring v. Commonwealth*, 413 A.2d 1171 (Pa. Cmwlth. 1980) (odor of alcohol, slurred speech, and motor vehicle accident sufficient to establish reasonable grounds that licensee was driving a motor vehicle while under the influence of alcohol); *see also Dep't of Transp., Bureau of Traffic Safety v. Doyle*, 520 A.2d 917, 919 (Pa. Cmwlth. 1987) ("[I]nvolvement in an accident, combined with the strong odor of alcohol on his breath, are circumstances under which a reasonable person could conclude that [a licensee] was operating the vehicle under the influence of alcohol.").

Here, despite Licensee's insistence that he had not been drinking, Officer Downs observed at least two indicators of intoxication – slurred speech and a strong odor of alcohol emanating from Licensee's breath and person – which observations comported with the observations of other law enforcement officers to whom Officer Downs spoke at the accident scene. Licensee seemed vague and unsure about the mechanism of the accident when questioned by Officer Downs. Additionally, the bus driver and the detective Officer Downs met at the scene explained that Licensee's vehicle had been involved in an arguably avoidable accident with the bus. Further, Licensee refused to participate in field sobriety testing when requested. The totality of these circumstances and observations combined to present a scenario where Officer Downs could have concluded that Licensee drove his vehicle while under the influence of alcohol. *See Doyle*; *Herring*.

Moreover, notwithstanding the Trial Court's observations that "[t]he odor of alcohol could have been caused by the passengers" and that Licensee's slurred speech "could have been from the trauma of the accident[,]"[10] such alternative explanations do not foreclose the equally reasonable conclusion reached

---

[10] Trial Court Opinion at 4.

11

by Officer Downs that these behaviors could have been caused by intoxication, and the Trial Court erred by basing its determination on such alternative reasonable explanations for Licensee's behavior.[11]  *See Gaskin*, slip op. at 10.

Because Officer Downs could have concluded that Licensee had driven his vehicle under the influence of alcohol based on his observations, the Trial Court erred by determining that the DOT failed to establish that Officer Downs had reasonable grounds to request that Licensee submit to chemical testing.  *See Dreisbach*; *Demarchis*; *Sisinni*.

For the above reasons, we find that the Trial Court erred by sustaining Licensee's appeal.[12]  Accordingly, we reverse the Trial Court's order and reinstate the DOT's 18-month suspension of Licensee's operating privilege.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[11] We further observe that Officer Downs made his observations that Licensee had an odor of alcohol when Licensee was out of the vehicle away from the other occupants of the vehicle.

[12] We observe that, although Licensee testified that the police did not provide him with the Implied Consent Warnings from the DL-26B Form, this allegation forms no part of this appeal, as the Trial Court did not sustain Licensee's appeal for this reason.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quinnie McKenzie Walker, III      :
      :
v.      :
      :
Commonwealth of Pennsylvania,      :
Department of Transportation,      :
Bureau of Driver Licensing,      :   No. 1381 C.D. 2023
      Appellant     :

## **O R D E R**

AND NOW, this 4th day of April, 2025, the October 19, 2023 order of the Court of Common Pleas of Allegheny County is REVERSED, and the 18-month suspension of Quinnie McKenzie Walker, III's operating privilege is REINSTATED.

_____

CHRISTINE FIZZANO CANNON, Judge